JOHN H. WALL *et al. vs.* ABRAHAM EISENSTADT *et al.*

MAY 4, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. This is a bill in equity to restrain adjoining landowners from committing a nuisance by erecting an extension to their garage upon a portion of Constitution street in the town of Bristol. The cause is here on complainants' appeal from a decree of the Superior Court dismissing the bill.

The court below found that complainants had not proved that they would suffer such substantial damage and injury as a result of the extension of the garage as to enable them to maintain the bill as individuals and also that the proposed addition would not extend into Constitution street as the present occupation line is the northerly line thereof.

Complainants' house is situated on the north side of Constitution street and adjoins the respondents' land on the east. The bill alleges that the building inspector of the town of Bristol threatens to grant to the respondents permission to extend their garage southerly into said street a distance of about eleven feet. The complainants contend that the proposed extension of said building into the street will cause special damage to them. There is a sun parlor on the southwesterly corner of complainants' house with a window facing west. The distance between the division line of the properties and the westerly side of complainants' house is 17.64 feet. Respondents' garage at present extends easterly to the boundary line between the properties and southerly to a line which complainants contend is the

northerly line of Constitution street and therefore the proposed addition to the garage will extend 11.57 feet southerly into Constitution street. Such addition will materially interfere with the view from the westerly window of complainants' sun parlor. The complainants have a clear view from this westerly window down Constitution street to Hope street. The proposed addition to the garage will also obstruct the air and breeze from the west. A real estate broker testified that in his opinion the erection of the proposed addition would cause a substantial loss and depreciation in the value of complainants' property. An engineer testified to the obstruction of view and to the loss of light and air. That such would be the effect of the proposed extension is obvious from an examination of a photograph filed as one of the exhibits.

The law recognizes an easement of light and air in the street in favor of the abutting owner. "This right to light and air is not restricted to the space immediately in front of the abutter's property but extends on either side a reasonable distance, to prevent the obstruction of the access of light and air to the abutter's property." Lewis on Eminent Domain, (3rd ed.) Secs. 121, 123. "An easement of light, air, or view is a valuable property right, and in general it is held that an interference with it by a structure on a street or highway is ground for an injunction at the instance of the abutting owner." 40 A. L. R. 1321, note. See also *World Realty Co.* v. *City of Omaha*, 113 Neb. 396 (1925); *Clark* v. *Peckham*, 10 R. I. 35; *Sweet* v. *Conley*, 20 R. I. 381; *Steere* v. *Tucker*, 39 R. I. 531; *Trafton* v. *Downey*, 51 R. I. 87.

In *Steere* v. *Tucker*, *supra*, respondent's building stood upwards of forty feet from the nearest portion of complainant's land and upwards of sixty-five feet from the nearest part of complainant's house, by reason of which it was held that the building did not in any substantial manner interfere with complainant's right of view. The court said, p. 545: "There is no evidence from either himself (complainant)

or any other witness to show that his property has been injured in the slightest degree; there is nothing to show that any air or any light is cut off from his premises by reason of the alleged encroachment." . . . "No inference can be drawn from its size or location that it even casts a shadow at any time upon complainant's land, or that it interferes in the slightest degree with the free circulation of the air, so far as the complainant is concerned." This decision emphasizes the fact that there was no special damage to complainant and recognizes the principle thereafterwards laid down in *Trafton* v. *Downey, supra*, that one suffering "a private and special injury different from that suffered by the public at large . . . is entitled to relief by his individual suit." In the present case respondents' building extends to the boundary or division line of the two properties and within eighteen feet of complainants' house. It is clear that the proposed addition would not only cast a shadow upon complainants' land but would materially interfere with the complainants' right to light, air and view.

There remains to be considered the question of the width of Constitution street and whether the land upon which respondents propose to build is a portion of said street. To determine the true width and location of Constitution street recourse must be had to certain documents and plats relating thereto, some of which are ancient. These documents and plats of ancient and recent surveys form the basis from which, without great difficulty, it is possible to determine the width and location of Constitution street.

In the first of these documents, dated August 6, 1680, John Walley and others, all of Boston in the Colony of Massachusetts, agreed with Josiah Winslow, Governor of New Plymouth Colony, and other colonial officials to buy the land which now comprises the town of Bristol. These men in certain of the documents are sometimes described as the "Proprietors" or "Four Purchasers." August 27, 1680, the "Four Purchasers" entered into an agreement, called, the "Grand Articles," with certain other prospective pur-

chasers to receive fractional shares in the land acquired by
the "Four Purchasers." April 7, 1686, a committee was
appointed "to take care" that the Grand Articles be re-
corded and "the Deeds from the proprietors be completed."
June 16, 1690, the Proprietors executed to the "Inhabitants
of the Town of Bristol" the "Deed of Highways" which,
with the plats thereafter filed, forms the basis of complain-
ants' contention that Constitution street has a width of
five rods and that the land upon which respondents propose
to build is within said street.

So much of the Deed of Highways as is necessary to be
considered in relation to the streets of Bristol, and more
particularly Constitution street, is as follows: " . . .
the lowermost thereof, named Thames Street, lyeth accord-
ing to the conveniency of the Shore; the next above it is
Hope Street and is Four Rods wide, and is laid out straight
from end to end. The third from the Salt water is High
Street, and is Five Rods wide, laid out likewise straight
from one end to the other. And the Fourth or uppermost
from the Sea is Wood street likewise straight, and Four
Rods wide from end to end. Also nine Streets that lie
neare East & West, crossing the aforementioned Streets
and running down to the Sea, seven whereof are Five Rods
wide, the other two, (Viz.) the Northermost is but Four
Rods wide, & the Southermost but one is but Three Rods in
breadth, every one of the said nine Streets are straight
& run from the uppermost Street or Wood street to low
water mark, except the Northermost which is only from
High Street to low water mark."

A plan of the town was drawn from an actual survey made in
1680 by Captain Samuel Woodbury and copies were given to
the four original Proprietors. October 30, 1693, it was voted
that the deed of the Proprietors be recorded.

Constitution street on which the properties of the com-
plainants and the respondents are located was formerly
known as Queen street and was one of the seven streets
referred to above as "lying near east and west" and describ-
ed as being five rods wide.

In 1856 it was voted at a town meeting that a survey of the streets be made and a record thereof made and deposited in the town clerk's office and that all further repair and placing of buildings and fences be in accordance with this survey. This survey is known and referred to as the Schubarth survey. The record thereof in the town clerk's office affirms the lines of Constitution street to be five rods wide, as defined and established in the Deed of Highways and also shows that some of the abutting owners have built fences and structures beyond the true northerly line of Constitution street. The line of said fences and structures as drawn on the Schubarth plat is the present line of occupation.

William W. Perry, a civil engineer residing in Bristol, testified fully as to the original plats and documents relative to the laying out of the town and the location and width of the streets thereof. His knowledge is derived in part from his work and experience as town surveyor. No one was called to contradict his testimony. He identified on the Woodbury survey the four streets mentioned in the Deed of Highways running nearly north and south, namely, Thames, Hope, High and Wood streets,—Hope, High and Wood streets running parallel with each other,—and the nine streets therein described as "lying near east and west." His testimony tends strongly to establish the location of the northerly line of Constitution street. From his experience and knowledge of the entire matter, his statements are entitled to great weight.

It is obvious from an examination of the ancient plats and the more recent surveys that the streets in this portion of Bristol were laid out at right angles. A survey starting with a right angle at the northeast corner of Hope and Constitution streets and with another right angle at the northwest corner of Constitution and Wood streets shows that the north line of Constitution street at the place in question is about eleven and one half feet north of the so-called occupation line. The proposed permit to build, which it may be

assumed respondents are willing to accept, indicates that the town of Bristol considers that the true northerly line of Constitution street is not the occupation line and the permit which it proposes to grant is a license to occupy a portion of said street until such time as said town shall require all other landowners maintaining structures extending beyond the actual street line to remove the same. "The highway having been established, the public right could not be abandoned except in the manner provided by law for the abandonment of highways, and no right therein could be obtained either by nonuser or adverse possession." *Knowles* v. *Knowles*, 25 R. I. 325. We are of the opinion, therefore, that the proposed extension of the garage by respondents will encroach upon Constitution street and will work special and substantial damage to the complainants in the loss of light, air and view.

The complainants' appeal is sustained and the decree appealed from is reversed.

May 11, 1931, the parties may present for our approval a form of decree to be entered in the Superior Court.

*William T. O'Donnell, Ralph M. Greenlaw, Edwin J. Tetlow*, for complainants.

*Knauer & Fowler*, for respondents.