Shannon REAGAN et al.

v.

The CITY OF NEWPORT et al.

No. 2010–428–Appeal.

Supreme Court of Rhode Island.

April 17, 2012.

34

Joseph DeAngelis, Esq., Providence, for Plaintiff.

Joseph J. Nicholson, Jr., Esq., Newport, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

This case arises out of a dispute over real property in the City of Newport (Newport or city). The plaintiffs, Shannon Reagan, William A. Reagan, Terrance Moy, and Margaret Moy, appeal from a judgment in favor of the defendants, Newport and its representatives,[1] on the plaintiffs' action to clear title to a portion of the Washington Street Extension, which is lo-

cated in Newport. In this appeal, the plaintiffs contend that the trial justice erred in holding that statutory abandonment is the exclusive means by which a municipality may abandon a public highway. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I
### Facts and Procedural History

This case involves a dispute over the portion of the Washington Street Extension abutting plaintiffs' land. The Washington Street Extension initially was established by a resolution of the Board of Aldermen of Newport (board) in 1915, which stated that "it is necessary that a new highway be laid out extending in a northerly direction from the present northerly end of Washington Street to the south side of Cypress Street of a width of about fifty feet." This resolution sought to take by eminent domain a strip, approximately fifty feet wide, of land passing through several lots of independently owned land along Narragansett Bay.

At the time, Edith Kendall[2] owned the land out of which the portion of the Wash-

1. The individual representatives named in plaintiffs' verified complaint are as follows: Laura Sitrin, in her capacity as finance director and treasurer for Newport, and Charles Y. Duncan, Stephen C. Waluk, Colleen McGrath, Jeanne–Marie Napolitano, Mary C. Connolly, Mayor John J. Trifero, and

Stephen R. Coyne, in their capacities as members of the Newport City Council.

2. Although this Court recognizes that Edith's last name appears as "Kendell" in her deed to Newport, for the purposes of this appeal we adopt the spelling of "Kendall" because it is

ington Street Extension subject to this litigation was carved.[3] After considering Ms. Kendall's opposition to the board's resolution, on December 16, 1915, the board ordered and decreed that the Washington Street Extension "highway be established and laid open by removing all buildings, fences and other impediments therein." The following year, on December 7, 1916, the board valued Ms. Kendall's parcel at $3,524. Two days later, on December 9, 1916, Ms. Kendall recorded a deed dated October 23, 1916, conveying her portion of the Washington Street Extension[4] to Newport, as well as to its "successors and assigns," for consideration of $3,524. The deed specifically granted: "TO HAVE AND TO HOLD the aforegranted premises, with all the privileges and appurtenances thereto belonging, to the said City of Newport and its successors and assigns, to its and their use and behoof forever for the purpose of a highway only."

Over the years, Ms. Kendall's remaining property abutting the Washington Street Extension was conveyed in separate parcels. The plaintiffs are the current owners of such property, which consists of six parcels of real estate: specifically, Shannon Reagan owns lot Nos. 354 and 260; William Reagan owns lot Nos. 299 and 300; and Terrance and Margaret Moy own lot Nos. 297 and 298, all on Assessor's Plat No. 9. Each of plaintiffs' parcels consist of a residential lot, as well as a lot fronting Narragansett Bay. The Washington Street Extension separates each bayside lot from its corresponding residential lot.

The Washington Street Extension served as a public highway until the construction of the Claiborne Pell Newport Bridge (Newport Bridge) in the late 1960s. After construction of the Newport Bridge was completed, the Washington Street Extension became a "dead end" and no longer could function as a public highway. Thereafter, according to plaintiffs, the Washington Street Extension fell into disrepair, becoming an "eyesore" littered with debris, potholes, and overgrown grass and weeds. The plaintiffs also stated that the property had become a hotspot for teenage drinking and "sex parties." Richard C. Sardella, a former mayor of Newport, similarly testified that the Washington Street Extension was an "eyesore," and he described it as a "ripped up road, filthy dirty, [and] overgrown." In contrast, Charles J. Laranjo, a lifetime resident of the city, testified that he had never seen any "inappropriate" activity on the Washington Street Extension, nor had he seen it "dirty." Instead, Mr. Laranjo stated, it was "a beautiful area" and that he, as well as other members of the public, frequented the area to "enjoy[ ] the views there" and to watch the fireworks.

spelled as such in all other documents before this Court.

3. Although this dispute does not relate to the entirety of what is known as the Washington Street Extension, hereafter we will refer to the disputed property as the Washington Street Extension for the sake of clarity.

4. Specifically, the deed described the property to be conveyed as follows:
"A certain strip of land about fifty feet in width running through land of this grantor bounded Northerly on Cypress Street, fifty (50) feet; Easterly on other land of Edith Kend[a]ll, one hundred fifty-one and two tenths (151.2) feet; Southerly, on other land about to be conveyed to the City of Newport by Frederick J. Buenzle and wife, fifty and six tenths (50.6) feet; Westerly, by other land of Edith Kend[a]ll, one hundred and fifty-one and two tenths feet, for a more particular description of which reference is hereby made to a plat entitled 'Plat of Washington Street Extension, Newport, R.I.' and on file in the office of the City Clerk of said City of Newport."

According to plaintiffs, Newport had not maintained the Washington Street Extension since the Newport Bridge's construction.[5] The plaintiffs testified that they had performed such maintenance themselves since they began residing on the abutting land. Beginning in 2001, plaintiffs approached Newport, requesting that it formally abandon the property in question or sell it to plaintiffs. On March 12, 2003, the Newport City Council passed a resolution declaring that "[t]he Washington Street [E]xtension so-called, running between Cypress Street and a state highway, has ceased to serve any useful public purpose" and authorizing the sale of the land to the then-abutting property owners. Several months later, on September 10, 2003, however, the city council voted against selling the land.

Thereafter, in July 2004, then-Mayor Sardella and the abutting property owners[6] entered into a memorandum of understanding (MOU), which gave the abutters "non-exclusive access to the Washington Street Extension, so-called, to maintain and improve the Washington Street Extension at no cost to the City of Newport." The MOU also expressly declared that the abutters were not to "exclude any member of the public from using the Washington Street Extension," as the MOU was "a non-exclusive right to maintain and improve the Washington Street Extension only." The MOU provided Newport the authority to terminate the agreement "with or without cause on written notice to the 'abutters' who will cease their maintenance and improvement efforts immediately on receipt of this written notice." After executing the MOU, plaintiffs expended a large sum of money improving the Washington Street Extension.[7] Such improvements included replacing the existing asphalt with loam and grass, as well as reinstalling curbs.

By city council resolution on September 22, 2004, Newport terminated the MOU. The city informed the abutters of its termination on October 19, 2004. Subsequently, on June 22, 2005, plaintiffs filed a complaint seeking to clear title to the Washington Street Extension. Specifically, plaintiffs averred that title to the Washington Street Extension had vested in them, in fee simple, as a result of the city's *de facto* abandonment of such property.[8] After a jury-waived trial, the trial justice

---

5. Although defendants put forth no evidence to suggest that the city performs, or at any time performed, any maintenance on the Washington Street Extension, it is undisputed that the city retains both a sanitary sewer main and a water main beneath the Washington Street Extension.

6. At the time, the land abutting the Washington Street Extension was owned by Shannon Reagan, Terrance and Margaret Moy, and William Walaska. Thereafter, William Reagan acquired William Walaska's interest.

7. The trial justice determined that plaintiffs had expended approximately $27,000.

8. The plaintiffs asserted various other allegations in both their complaint and amended complaint, including: (1) breach of reversion of title; (2) breach of covenant of good faith and fair dealing; and (3) unjust enrichment. The plaintiffs also sought "compensation for unjust taking," the issuance of a writ of mandamus, and, at a later hearing, an injunction to prevent the Washington Street Extension from being used "for any purpose other than a highway." On April 28, 2009, the trial justice entered judgment for defendants on the parties' cross-motions for summary judgment with respect to plaintiffs' reversion claim. The trial justice issued a bench decision in favor of *defendants on the remaining claims* on July 16, 2010. On appeal, however, plaintiffs do not assert error in the trial justice's determination of any of these claims. As a result, such claims will not be addressed by this Court.

issued a bench decision, concluding that the only manner in which a municipality may abandon a highway is through Rhode Island's "Abandonment by Towns" statute, G.L.1956 chapter 6 of title 24 (Abandonment Statute).[9] Therefore, after the trial justice found it "undisputed that the City of Newport did not and has not abandoned the Washington Street Extension through compliance" with the Abandonment Statute, he denied plaintiffs' contention that the city had abandoned the Washington Street Extension. Final judgment was entered on October 1, 2010. Thereafter, plaintiffs timely filed a notice of appeal.

## II

### Standard of Review

■■■ "It is well settled that '[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *.'" *Notarantonio v. Notarantonio*, 941 A.2d 138, 144 (R.I.2008) (quoting *Haydon v. Stamas*, 900 A.2d 1104, 1113 (R.I.2006)). "[I]f, on review, the record indicates that competent evidence supports the trial justice[']s find-

ings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." *Id.* (quoting *Imperial Casualty and Indemnity Co. v. Bellini*, 888 A.2d 957, 961 (R.I.2005)). Nevertheless, it is equally well established that "[q]uestions of law * * *, including questions of statutory interpretation, are reviewed *de novo* by this Court." *Rhode Island Public Telecommunications Authority v. Russell*, 914 A.2d 984, 989 (R.I.2007) (quoting *Carnevale v. Dupee*, 783 A.2d 404, 408 (R.I. 2001)).

## III

### Discussion

■■■ The plaintiffs argue that the trial justice erred as a matter of law by holding that statutory abandonment is the exclusive manner by which a municipality may abandon a public highway. The plaintiffs assert that "[t]his case presents a novel controversy * * * of first impression for the Court"—*viz.*, whether common-law abandonment by nonuse remains a viable means to abandon a public highway. The plaintiffs submit that common-law abandonment "continues to have vitality today,"

9. The Abandonment Statute provides, in pertinent part, as follows:

"Whenever, by the judgment of the town council of any town, a highway or driftway in the town, or any part of either, has ceased to be useful to the public the town council of the town is authorized so to declare it by an order or decree which shall be final and conclusive; and thereupon the title of the land upon which the highway or driftway or part thereof existed shall revert to its owner, and the town shall be no longer liable to repair the highway or driftway; provided, however, that the town council shall cause a sign to be placed at each end of the highway or driftway, having thereon the words 'Not a public highway',

and after the entry of the order or decree shall also cause a notice thereof to be published in a newspaper of general circulation, printed in English at least once each week for three (3) successive weeks in a newspaper circulated within the city or town and a further and personal notice shall be served upon every owner of land abutting upon that part of the highway or driftway which has been abandoned who is known to reside within this state but nothing contained in this chapter shall in any manner affect any private right-of-way over the land so adjudged to be useless as a highway or driftway, if the right had been acquired before the taking of the land for a highway or driftway." G.L.1956 § 24–6–1(a).

as "there is no language in [the Abandonment Statute] that suggests that the legislature intended for that statute to be the exclusive means of abandoning property in this state." Further, plaintiffs maintain that the Abandonment Statute "is intended to protect the abutters" and, thus, "serves no purpose in the context of this controversy," where the abutters are seeking to establish abandonment. The plaintiffs contend that this Court should adopt a rule whereby a municipality may abandon a public highway "when a municipality (1) has intent to abandon together with non-use and (2) has exhibited external acts to put that intention into effect." To support this contention, plaintiffs point to two cases from other jurisdictions, *Ambs v. Kalamazoo County Road Commission*, 255 Mich.App. 637, 662 N.W.2d 424 (2003), and *Marrin v. Spearow*, 35 Conn.App. 398, 646 A.2d 254 (1994), which, plaintiffs contend, recognize the viability of common-law abandonment by nonuse despite the existence of a "subsequently authorized * * * procedure for discontinuing a public roadway."

In response, defendants argue that "abandonment of a highway in the State of Rhode Island can only follow if a municipality satisfies all of the statutory prerequisites" of the Abandonment Statute—which, according to defendants, indisputably have not been complied with in this case. Further, defendants contend that, even if the statutory prerequisites had been followed or common-law abandonment were to be recognized, plaintiffs' claim of ownership nevertheless fails. To that end, defendants maintain that Newport owns the Washington Street Extension in fee simple and, because in an abandonment title reverts to the fee owner, the city may not be divested of its fee interest in the property.

In his bench decision, the trial justice pronounced:

"As far back as the turn of the [twentieth] century, the Rhode Island Supreme Court has steadfastly held that once a highway has been established, the public right cannot be abandoned except in the manner provided by law for the abandonment of highways and no private right can be obtained either by nonuse or adverse possession."

He then cited *Almy v. Church*, 18 R.I. 182, 187, 26 A. 58, 60 (1893) and *Knowles v. Knowles*, 25 R.I. 325, 330, 55 A. 755, 757 (1903), for the proposition that this Court repeatedly has indicated "that abandonment of a public roadway can only occur in the manner provided by law." Further, the trial justice interpreted our declarations in *O'Reilly v. Town of Glocester*, 621 A.2d 697, 700 (R.I.1993), that the Abandonment Statute "contains a number of requirements that a town must fulfill before successfully abandoning a right-of-way" and that "[t]he law is clear in Rhode Island that a town cannot abandon its obligation to maintain a right-of-way by simply failing to fulfill its maintenance obligations," to mean that the Abandonment Statute's procedures are the "exclusive means" by which a municipality may abandon a public highway.

■ Upon conducting our own *de novo* review of the Abandonment Statute, we agree with the trial justice's conclusion that a public highway may be abandoned only by strict compliance with that statute. As the trial justice aptly acknowledged, this Court has long held that abandonment of highways is statutorily governed. As recognized in 1903 by this Court's opinion in *Knowles*, 25 R.I. at 330, 55 A. at 757, highway-abandonment statutes have existed in Rhode Island since long before the turn of the twentieth century. *See id.* ("From early times the statutes have pro-

vided legal methods of discontinuing highways which should be found no longer useful. The General Assembly has guarded very jealously its control over the highways which it has laid out."); *see also Greene v. O'Connor*, 18 R.I. 56, 59, 25 A. 692, 693 (1892) ("Having once become a highway, it must continue to be a highway until abandoned or declared useless as such by the board of aldermen, under another provision of the statute."). Further, we specifically declared: "When a highway is once established as such by the action of the proper [public] authorities, it does not cease to be such, even though unused for many years, until it has been discontinued by the proper authorities." *Knowles*, 25 R.I. at 330, 55 A. at 757 (quoting H.G. Wood, *The Law of Nuisances*, § 297, at 372 (3d ed. 1893)); *see also Wall v. Eisenstadt*, 51 R.I. 339, 345, 154 A. 651, 653 (1931).

This Court has made it clear that discontinuance or abandonment of a public highway entails a formalized, semi-judicial process and proceeding. *See Wolfe v. City of Providence*, 77 R.I. 192, 203, 74 A.2d 843, 849 (1950) ("In this state a municipality may permanently close or abandon a street only after formal proceedings of a semi[-]judicial nature in accordance with G.L.1938, chap. 72, §§ 31 and 32." [10]); *Frank W. Coy Real Estate Co. v. Pendleton*, 45 R.I. 477, 484, 123 A. 562, 565 (1924) ("Under the statute the abandonment of

an existing highway should be a matter of record[, t]he result of formal proceedings."). The Abandonment Statute explicitly dictates the precise process required to abandon a highway—a town or city council must declare by a final, conclusive order or decree that a highway has ceased to be useful to the public; a sign stating "Not a public highway" must be placed at each end of the highway; public notice of the decree must be published; and personal notice, as well as an opportunity to be heard, must be given to abutting property owners. Section 24–6–1. Further, we previously have held that, in order to abandon a public highway, the strictures of the Abandonment Statute must strictly be complied with. *O'Reilly*, 621 A.2d at 700 ("General Laws 1956 (1989 Reenactment) chapter 6 of title 24 contains a number of requirements that a town must fulfill before successfully abandoning a right-of-way."); *Godena v. Gobeille*, 88 R.I. 121, 126, 143 A.2d 290, 292 (1958) ("The pertinent statute requires that a town council in order to abandon a highway must follow the prescribed procedure.").

The plaintiffs imply, through reference to *Ambs*, 662 N.W.2d at 429, that strict compliance with the Abandonment Statute is required only when a city council undertakes to abandon a highway in accordance with said statute. We find such an argument unavailing. We previously have held that "[i]n this state a municipality may

---

**10.** General Laws 1938 ch. 72 § 32, a previous version of the Abandonment Statute, stated:

"Every town council, before proceeding to abandon any highway or driftway or any part thereof, shall give notice to the owners of the lands abutting upon any part of such highway or driftway within the town to appear, if they see fit, and be heard for or against such abandonment, and as to the damage, if any, which they will sustain thereby. Such notice shall be given by advertisement once a week for 3 successive weeks next prior to the meet-

ing of the town council at which such abandonment is to be first considered, in some daily or weekly newspaper printed in English and published in the town; or, if there be no such newspaper published in the town, then in some such daily or weekly newspaper published in the nearest town in which such newspaper is published; and a further and personal notice shall be served upon every person known to reside within this state who is an owner of land abutting upon that part of such highway or driftway which it is proposed to abandon."

permanently close or abandon a street only after formal proceedings of a semi[-]judicial nature in accordance with [the statutory requirements]." *Wolfe,* 77 R.I. at 203, 74 A.2d at 849. Further, in *O'Reilly,* 621 A.2d at 700, we plainly stated that "[t]he law is clear in Rhode Island that a town cannot abandon its obligation to maintain a right-of-way by simply failing to fulfill its maintenance obligations." Moreover, this Court unequivocally stated in *O'Reilly,* 621 A.2d at 703, that compliance with the procedures comprised in the Abandonment Statute is the exclusive method available for abandoning a public highway. We never have limited the exclusivity of the Abandonment Statute to occasions where the city or town council commences to undertake the procedures therein, and we decline to do so now.

The plaintiffs also contend that the Abandonment Statute serves no purpose, and is therefore inapplicable, to abutters seeking abandonment of a highway, rather than opposing it. The suggestion that the Abandonment Statute does not apply when an abutter supports the abandonment of a highway, however, is contradicted by the language of the Abandonment Statute itself, which states, in relevant part:

> "Every town council, before proceeding to abandon any highway or driftway or any part thereof, shall give notice to the owners of the lands abutting upon any part of the highway or driftway within the town to appear, if they see fit, and be heard *for or against the abandonment,* and as to the damage, if any, which they will sustain thereby." Section 24–6–2 (emphasis added).

This language indicates that the Abandonment Statute was intended to remain applicable regardless of whether the abutting property owners supported or opposed such abandonment. Accordingly, we hold that the Abandonment Statute is the only method by which a municipality may abandon a public highway. Thus, because the Abandonment Statute was not complied with, we affirm the trial justice's finding that Newport has not abandoned the Washington Street Extension.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.