**Supreme Court**

No. 2011-308-Appeal.
(PC 10-35)

Nationwide Property & Casualty Insurance    :
  Company as subrogee of Dean F. Pepper

              v.                             :

  D.F. Pepper Construction, Inc.             :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Nationwide Property & Casualty Insurance   :
  Company as subrogee of Dean F. Pepper

               v.               :

  D.F. Pepper Construction, Inc.         :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, D.F. Pepper Construction, Inc. (DFP Inc.) appeals from both the Superior Court's denial of its motion for summary judgment and from its grant of judgment, after a bench trial, in favor of the plaintiff, Nationwide Property and Casualty Insurance Company (Nationwide) in the amount of $283,964.27. Specifically, the defendant asserts that the trial justice erred in finding that Dean Pepper was negligent and, further, that Nationwide's claim as subrogee of Dean Pepper should have been barred by both the antisubrogation rule[1] and the terms of the Nationwide policy. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

The events giving rise to this dispute took place on a snowy night in February 2009. Dean Pepper, the owner and sole shareholder of DFP Inc. had been working on one of his trucks

---

[1] Briefly stated, the antisubrogation rule provides that no right of subrogation can arise in favor of an insurer against its own insured. 16 Lee R. Russ and Thomas F. Segalia Couch on Insurance 3d § 224:1 (2005).

at a friend's garage in the early morning of February 4, before returning to his home at the corner of Plainfield Pike and Capitol Street in the Town of Johnston. The house was situated "hard by the corner," set back only five feet from Plainfield Pike and three and a half to four feet from Capitol Street. Once home, Pepper noticed that Capitol Street, a small secondary road, was still snow-covered. After clearing the snow from his own property, Pepper used a backhoe to plow Capitol Street from his property to Plainfield Pike, as he had done on prior occasions. After plowing, Pepper noted that the surface of Capitol Street was "hard packed" and icy. Observing that Plainfield Pike was in good condition, Pepper decided to park the backhoe and take DFP Inc.'s 1998 Mack dump truck to Dunkin' Donuts, a short distance away.

A short while later, at around 2 a.m., Pepper returned to his house. Pepper drove down Plainfield Pike and took the left turn onto Capitol Street "very slowly." Once on the "hard packed, slippery" Capitol Street, the truck slid downhill and to the right, hitting Pepper's house at the corner. The force of the impact caused the front end of the truck to crash through the foundation and west side wall of the house. The house sustained structural damage to the extent that it later was condemned and demolished. After the accident, Pepper got out of his truck on Capitol Street and immediately fell on the icy surface, realizing that it was "much slipperier than [he] thought it was." The police officer who responded to the scene noted:

> "the road conditions at the time of this accident were extremely poor. The area had received approximately 3"-5" of snow and the roadways were very icy. Plainfield St. was plowed down to the asphalt, but was not treated with any sand or salt, thus exposing 'black ice.' Capitol St. was neither plowed nor treated with any sand or salt and was basically a layer of snow on top of hard packed ice."

The house was insured by Nationwide, and the dump truck, which was registered to DFP Inc., was insured by Merchants Mutual Insurance Company (Merchants). Dean Pepper filed a

claim with Nationwide under his homeowner's policy, and Nationwide paid the loss. Under its homeowner's policy, the insurer has a right of subrogation against third parties who caused the loss that it was obligated to reimburse. Nationwide, as subrogee of Pepper, then exercised that right by filing suit against DFP Inc., the registered owner of the truck, alleging vicarious liability for the negligence of its employee, Pepper. In its complaint, Nationwide alleged that Pepper had been negligent in his operation of the vehicle, in failing to "keep the tractor trailer in the roadway," in failing to use reasonable care and to drive in a manner appropriate to the road conditions, and, finally, in "creating an unreasonably dangerous condition." Nationwide asserted that, because Pepper was acting within the scope of his employment, DFP Inc. is vicariously liable under both the principle of respondeat superior and state law. The Merchants policy defines its "insureds" as both DFP Inc. and "[a]nyone else while using with your permission a covered 'auto' * * *."

The defendant, DFP Inc. moved for summary judgment, arguing that the claims were barred under the antisubrogation rule. The plaintiff, Nationwide, then filed a cross-motion for summary judgment, arguing that the antisubrogation rule would not apply here because Nationwide would recover not from its insured (Pepper), but from a separate entity (DFP Inc.). The motions were heard on August 31, 2010, at which time the trial justice found that the question of whether Pepper was acting within the scope of his employment was a material fact in dispute; he therefore denied both motions.

On January 18, 2011, the day before trial, the parties appeared before the trial justice and stipulated that, under G.L. 1956 § 31-33-6, "the owner of a vehicle may be vicariously liable for the conduct of someone who has consent to drive the vehicle if the underlying driver is in fact negligent." Further, DFP Inc. acknowledged that it did not "dispute that Dean Pepper had

consent to drive the vehicle in question." Accordingly, trial proceeded the next day on the issues of negligence and damages.

At trial, Pepper was the only witness on the issue of negligence, and Bethany Moura was the sole witness testifying to the value of the home. The trial justice found that Pepper "felt that there was sufficient snow on Capitol Street that he chose to plow [it] voluntarily." The court "accept[ed] the driver's contention that he was driving slowly," but it observed that "even slowly this was at a speed greater than is reasonably prudent under the conditions * * *. Specifically, his speed was not so controlled as to avoid leaving the roadway and hitting the house." The court held that Pepper was negligent in failing to keep his vehicle under control and because "he did not observe and take into consideration the surrounding circumstances, including the conditions of the roadway that he had plowed." The trial justice also reiterated his prior ruling, noting that DFP Inc. and Dean Pepper are separate entities and thus, because there had been no allegation of a "sham" corporation, the antisubrogation rule does not apply in this case. On June 3, 2011, after receiving posttrial memoranda, the court issued a judgment in favor of Nationwide for $283,964.27.[2] On June 13, 2011, DFP Inc. filed the instant appeal.

## II

### Standard of Review

"It is well settled that '[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *.'" Reagan v. City of Newport, 43 A.3d 33, 37 (R.I. 2012) (quoting Notarantonio v. Notarantonio, 941 A.2d 138, 144 (R.I. 2008)). "[I]f, on review, the record indicates that competent evidence supports the trial justice[']s findings, we shall not

_____

[2] The judgment was in the amount of $222,170.45 plus statutory prejudgment interest of $61,793.82. The amount of damages is not an issue in this appeal.

- 4 -

substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." Id. (quoting Notarantonio, 941 A.2d at 144).

## III

## Discussion

On appeal, defendant raises two issues.[3] First, defendant argues that the trial justice erred in finding that Pepper had been negligent. Second, defendant contends that plaintiff's claim should have been barred by both the antisubrogation rule and the terms and conditions of the Nationwide homeowner's policy.

## A

## Negligence

"It is well settled that to prevail on a claim of negligence 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" Habershaw v. Michaels Stores, Inc., 42 A.3d 1273, 1276 (R.I. 2012) (quoting Holley v. Argonaut Holdings, Inc., 968 A.2d 271, 274 (R.I. 2009)). Duty here is established under Rhode Island law, which prohibits operators of motor vehicles from driving "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential

---

[3] The defendant appeals both the denial of his motion for summary judgment and the final judgment. However, this would appear to be procedurally defective. "Because an order denying a motion for summary judgment is an interlocutory determination and is not entitled to an appeal of right, we do not generally review such a denial." McKinnon v. Rhode Island Hospital Trust National Bank, 713 A.2d 245, 247 (R.I. 1998). "The denial of a motion for summary judgment merely determines that a fact issue is involved, and does not even establish the law of the case." Rhode Island Public Telecommunications Authority v. Russell, 914 A.2d 984, 991 (R.I. 2007) (quoting 73 Am. Jur. 2d Summary Judgment § 62 at 701 (2001)). After the denial of its motion for summary judgment, DFP Inc. received a full bench trial on the merits. It is the decision in that trial that is properly before this Court.

hazards then existing." G.L. 1956 § 31-14-1. Further, "speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance * * *." Id. Neither causation nor damages are contested by the parties. The issue before this Court is whether the trial justice was correct in holding that Pepper breached his duty by failing to control the vehicle sufficiently to prevent its collision with the house.

The trial justice held that Pepper was negligent "as he did not observe and take into consideration the surrounding circumstances including the conditions of the roadway that he had plowed." Further, "[the driver] also did not keep his vehicle under control [as] noted by the truck leaving the roadway." The court concluded by stating,

> "while this [c]ourt accepts the driver's contention that he was driving slowly, even slowly this was at a speed greater than is reasonably prudent under the conditions and having regard to the actual potential hazards that existed. Specifically, his speed was not so controlled as to avoid leaving the roadway and hitting the house."

Although plaintiff argued that defendant created an unreasonably dangerous condition, it does not appear that the trial justice held that, in voluntarily undertaking to plow Capitol Street, defendant had done so negligently, thus creating the hazard. Instead, we understand that the trial justice's reference to defendant's plowing was to illustrate that he had notice of the dangerous condition—the hard packed ice beneath the snow: "The [driver] * * * felt that there was sufficient snow on Capitol Street that he chose to plow that part of a public street around his home voluntarily." Absent a determination that Pepper created the hazardous condition by negligent plowing, his failure to drive slowly enough to avoid colliding with the house is the apparent basis for the finding of the breach of a duty.

We note that there was a paucity of evidence introduced at trial tending to show negligence. Dean Pepper was the sole witness testifying to the events surrounding the accident.

- 6 -

The trial justice found his testimony about his slow rate of speed to be credible. There was no evidence that Pepper had been drinking or was otherwise impaired. The trial justice did state that "[t]he [c]ourt gives great weight to the police report that indicates that the road conditions were extremely poor and very icy;" however, it is a long-standing principle of this Court that "[t]he fact that a motor vehicle skids on a highway which is slippery is not evidence in and of itself that the vehicle was negligently handled * * *." Peters v. United Electric Railways Co., 53 R.I. 251, 255-56, 165 A. 773, 774 (1933). Nevertheless, it is our opinion that, in the case under review, it is reasonable to infer from the extent of the damage to the house that Pepper was driving in excess of the speed that was appropriate to the conditions. This Court applies a deferential standard of review to mixed questions of law and fact. See Reagan, 43 A.3d at 37. We will not substitute our opinion for that of the trial justice where "competent evidence supports the trial justice[']s findings * * * even though a contrary conclusion could have been reached." Id. (quoting Notarantonio, 941 A.2d at 144). Accordingly, we perceive no cause to disturb the finding of negligence by the trial justice.

**B**

**Antisubrogation Rule**

The antisubrogation rule has not yet been embraced by this Court. In courts where it has been applied, it is based upon "the basic definition of subrogation as a right that arises only with respect to rights of the insured against third persons to whom the insurer owes no duty * * *." 16 Couch on Insurance 3d § 224:1. It follows, then, "that no right of subrogation can arise in favor of an insurer against its own insured." Id. The public policy underlying this rule is two-fold: an insurer should not be allowed to pass on a loss to its insured that the insured has paid premiums

to cover, and to avoid a conflict of interest in which an insurer lacks the incentive to provide a vigorous defense to its insured. Id. § 224:3.

The defendant argues that the antisubrogation rule should be applied to prevent Nationwide from recovering from DFP Inc. because, if recovery is allowed, then Merchants, as insurer of the truck, will pay the claim and then exercise its right of subrogation against Pepper.[4] Thus, through this circular chain, Nationwide would recover from its own insured. It is not necessary to follow such an attenuated route in applying the antisubrogation rule. If circumstances proceed as the defendant suggests, the appropriate opportunity to consider whether this Court should adopt the antisubrogation rule would arise if and when Merchants seeks to recover from Pepper. The language of the Merchants policy purportedly covers Pepper, who was driving the truck with DFP Inc.'s consent, as an insured. Should Merchants choose to proceed against Pepper, that insurer arguably would be attempting to exercise a right of subrogation against its own insured. The issue might then be ripe for review; at this juncture it is merely speculative. In the circumstances of this case, Nationwide is seeking to exercise its right of subrogation against DFP Inc., a distinct legal entity from its insured, Pepper. We are satisfied, therefore, that even if we were to recognize the antisubrogation rule, it would have no application to the facts underlying this appeal.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of this case shall be remanded to the Superior Court.

---

[4] The Nationwide policy does not provide personal liability coverage for damage to property of the insured, and thus the defendant contends that the language of the policy itself should prevent Nationwide from recovering from DFP Inc. because Nationwide would not provide coverage to Pepper for any potential recovery by Merchants as subrogee of DFP Inc.



**TITLE OF CASE:**    Nationwide Property & Casualty Insurance Company as subrogee of Dean F. Pepper v. D.F. Pepper Construction, Inc.

**CASE NO:**    No. 2011-308-Appeal.
(PC 10-35)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    January 28, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**    Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiff:    Kevin S. Cotter, Esq.

For Defendant:  Brian C. Newberry, Esq.