**Supreme Court**

No. 2013-87-Appeal.
(PC 08-657)

Process Engineers & Constructors, Inc.　　:

v.　　　　　　　　　　:

DiGregorio, Inc. et al.　　　　:

NOTICE:　This opinion is subject to formal revision before publication in the Rhode Island Reporter.　Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Process Engineers & Constructors, Inc.   :

v.                                        :

DiGregorio, Inc. et al.                   :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.


**O P I N I O N**

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on February 6, 2014, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  The defendant, DiGregorio, Inc. (defendant or DiGregorio), appeals from a Superior Court judgment in favor of the plaintiff, Process Engineers & Constructors, Inc. (plaintiff or Process), granting the plaintiff's claim for quantum meruit.  After considering the written and oral arguments advanced by counsel, we are satisfied that cause has not been shown and that this appeal may be decided at this time.  For the reasons set forth below, we affirm the judgment of the Superior Court.

**Facts and Travel**

A series of contracts and subcontracts set the stage for this dispute.  On November 28, 2005, Brown University (Brown) contracted with Bond Brothers, Inc. (Bond Brothers) for the replacement of high-temperature, high-pressure water pipes, designed to provide heat and hot water to buildings on the Brown campus.  Brown preselected a ready-made, pre-insulated piping system manufactured by Perma Pipe, Inc. (Perma Pipe).  On April 24, 2006, Bond Brothers

entered into a subcontract with DiGregorio, whereby DiGregorio agreed to furnish labor, materials, equipment, and services for the project. On the same day, DiGregorio entered into a sub-subcontract with Process, in which Process agreed to install the pipe. The sub-subcontract required that change orders must be in writing and signed by the owner, contractor, and architect.

Process installed the pipe. In the fall of 2006, however, the parties discovered that the insulation surrounding the interior of the pipe had become wet.[1] Process then replaced the damaged pipe and finished the work necessary to complete its portion of the project. In February 2008, Process filed this action against DiGregorio, alleging that DiGregorio failed to pay for some of the work that Process performed on the project. Process asserted breach of contract and quantum meruit claims against DiGregorio.[2]

On April 30, 2012, trial commenced before a justice of the Superior Court sitting without a jury. Three witnesses testified on that day. Robert Silvia (Silvia), the owner and president of Process, testified that Process was a subcontractor to DiGregorio on the project and that Process was to install "prefabricated conduit piping systems." Silvia testified that there was a provision in the sub-subcontract regarding additional work or changes to the contract. Although Process never received any formal change orders, Silvia testified that Process was asked to and did perform work without a formal change order. Silvia discussed a number of invoices, which included change orders and relevant settlements and releases of holdback funds; ultimately, he

[1] The overall project was marred by sand infiltration, which had the potential to damage the entire system and resulted in litigation between Brown and the many contractors. The record is not clear regarding whether the water damage to the pipe was discovered as a result of the investigation into the sand infiltration or whether sand infiltration was raised at trial merely to pinpoint the timing of the wet pipe issue. It is clear that the sand infiltration is not specifically relevant to this appeal.

[2] The initial complaint also named Brown and Carolina Casualty Insurance Company, Inc. as defendants and included additional claims. A number of counterclaims, crossclaims, and third-party complaints also were filed. However, only the claims for breach of contract and quantum meruit by Process against DiGregorio proceeded to trial.

testified that Process was still owed $316,000. On cross-examination, Silvia acknowledged that he had no proof that the change orders noted in the invoices actually were approved. Additionally, when asked what Process was not paid for, Silvia responded, "I have no idea because we'd get checks and joint checks that weren't even made out to us. There was never any documentation to show what was paid and what wasn't paid." According to Silvia, three invoices from Process were termed "back charges"—the invoice for an additional performance bond premium, an invoice for the disposal of pipe fabrication that had been removed from Hope Street, and an invoice for the replacement of pipe sections that were reinstalled at Meehan Loop.

The plaintiff called Enrico DiGregorio, the president of DiGregorio, who testified as an adverse witness. He testified that DiGregorio withheld $148,694.51 from Process because it believed that Process was at fault for the water damage to the pipe. The witness, however, did admit that Process performed all of the work under the contract and that, at some point, the billing should have caught up and Process should have been paid.

Charles Barbanti (Barbanti), who was employed by Bond Brothers and was the project manager, testified during defendant's case. Barbanti testified that Bond Brothers made the final determination of who would be paid and that Process was paid for its work on the project, including "legitimate change orders." Regarding the wet pipe insulation, according to Barbanti, in addition to receiving it, welding it, and installing it, Process also was required to protect it and test it. Barbanti testified that, in his opinion, Process could have provided better protection to the pipe. Specifically, he stated that Process was "using like Saran wrap, which is like something you'd wrap a sandwich with," and instead, he "felt they should be using six or eight mil poly"—a heavier grade plastic. According to Barbanti, Process should have duct-taped the end of the pipe when Process received it. On cross-examination, Barbanti admitted that the manufacturer

shipped the pipes in the "Saran wrap" material and that the "six or eight mil poly" may have exceeded the manufacturer's specifications. Barbanti also admitted that Process was not responsible for dewatering the trench, and that Process was entitled to rely on someone else to keep the trenches dry. He also stated that dewatering was included in DiGregorio's scope of work.

The trial justice issued a written decision on July 13, 2012.[3] Addressing the breach of contract claim first, the trial justice found that the provision of the sub-subcontract between Process and DiGregorio relating to the requirement of written and signed change orders was clear and unambiguous. The trial justice concluded that Process had "failed to satisfy its burden to show that the conditions precedent [with respect to the change orders] have occurred and thus the [d]efendant has not breached its subcontract by nonperformance."[4]

The trial justice next addressed plaintiff's quantum meruit claim as applied to three items: the change orders, the additional bond premium, and the pipe replacement necessitated by wet insulation. Regarding the change orders and noting the inconsistency of Silvia's testimony, the trial justice found that plaintiff had failed to meet its burden of showing that plaintiff conferred a benefit on defendant and that defendant accepted the benefit. Next, the trial justice found that "[p]laintiff could recover the additional bond premium in the amount of $12,929.40, required by

---

[3] Only one transcript filed with this Court predates the trial justice's written decision—the transcript dated April 30, 2012, which contains the testimony described above. That transcript concludes with the trial justice stating, "Counsel, 9:30 tomorrow." The trial justice's decision states that the matter was heard over two days. The Superior Court docket sheet contains a number of entries for May 1, 2012 (but, notably, none for April 30, 2012). Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure leaves it to the appellant to "order from the reporter a transcript of such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record." The appellee may also request additional transcripts if he or she thinks that they are necessary. Id. It is the responsibility of the parties to ensure that all proper transcripts are ultimately filed with this Court.

[4] The trial justice's conclusion on the breach of contract claim has not been appealed.

- 4 -

the [b]ond company, based on an increase of the initial subcontract amount and not originally covered under the subcontract." Finally, regarding the wet pipe, the trial justice was "satisfied that Process has satisfied its burden to show that its loss was due to something [other] than its own actions," because it was not Process's responsibility to dewater the trenches. Accordingly, the court concluded that Process "was able to show that the additional costs in replacing the damaged pipe were not attributed to [p]laintiff's own inefficiencies or job preparation."

The trial justice granted recovery as to two invoices in his written decision: the increase on the bond premium ($12,929.40) and the replacement of the damaged wet pipe ($72,857.96). On September 26, 2012, after hearing a motion pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure filed by Process, the trial justice added an additional invoice in the amount of $8,295.68. The trial justice stated that the invoice was omitted from the written decision "through oversight." On October 12, 2012, the Superior Court entered a final judgment in the amount of $94,083.04, which reflected all three invoices.

**Standard of Review**

"It is well established that the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." Wellington Condominium Association v. Wellington Cove Condominium Association, 68 A.3d 594, 599 (R.I. 2013) (quoting Hernandez v. JS Pallet Co., 41 A.3d 978, 982 (R.I. 2012)). "If, as we review the record, it becomes clear to us that 'the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for [that of the trial justice] even though a contrary conclusion could have been reached.'" Id. (quoting Hernandez, 41 A.3d at 982). Nevertheless, "[a] judgment in a nonjury case will be reversed on

- 5 -

appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." Lamarque v. Centreville Savings Bank, 22 A.3d 1136, 1139-40 (R.I. 2011) (quoting Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 745 (R.I. 2009)).

**Analysis**

We begin by noting the paucity of factual findings in the Superior Court decision; the facts and travel section spans a scant three pages, and the decision contains only one credibility determination.[5] Before this Court, appellant DiGregorio's facts and travel section in its Rule 12A Statement is two paragraphs with no citations to the record. The plaintiff contributes only that it "has no material issue with the facts and travel presented by the Appellant or as laid out in the Superior Court decision." It is on this slate, with a meager record and no clearly articulated factual dispute, that we proceed to analyze whether "the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong."[6] Lamarque, 22 A.3d at 1139-40 (quoting Cathay Cathay, Inc., 962 A.2d at 745).

DiGregorio raises two issues on appeal. First, it contends that the trial justice erred in relying upon Process's opening statement as proof that it conferred a benefit on DiGregorio. Second, DiGregorio contends that the trial justice erred in awarding Process's back charges that were not proven to be fair and reasonable or due and owing.

Quantum meruit, a Latin term for "as much as he has deserved," is "[a] claim or right of action for the reasonable value of services rendered." Black's Law Dictionary 1361, 1362 (9th

---

[5] We note the requirements of Rule 52(a) of the Superior Court Rules of Civil Procedure: "In all actions tried upon the facts without a jury * * *, the court shall find the facts specially, and state separately its conclusions of law thereon * * *." (Emphases added.)

[6] The Court greatly appreciates clear and concise writing. However, it is also essential that the parties support their factual representations to this Court with citation to the record.

ed. 2009). Such an action permits recovery of damages "in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship." Id. at 1361-62. This Court has stated that "[t]o recover on an action in quantum meruit, it must be shown that the owner derived some benefit from the services and would be unjustly enriched without making compensation therefor." National Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985). Although the term "unjustly enriched" appears as a requirement for recovery under a quantum meruit theory, we note the nuanced distinction between unjust enrichment and quantum meruit: "While unjust enrichment focuses on the propriety of a payee or beneficiary retaining funds or a benefit, quantum meruit's primary focus is on the value of services rendered." Parnoff v. Yuille, 57 A.3d 349, 355 n.7 (Conn. App. Ct. 2012). Quantum meruit generally applies "in a situation in which the plaintiff has provided services to the defendant for which the defendant has refused to pay." Id.

Although we note the distinction between unjust enrichment and quantum meruit, both doctrines are quasi-contractual theories.[7] See Multi-State Restoration, Inc. v. DWS Properties, LLC, 61 A.3d 414, 418 (R.I. 2013) (noting that "actions brought upon theories of unjust enrichment and quasi-contract are essentially the same") (quoting Bouchard v. Price, 694 A.2d

---

[7] It may be more accurate to say that quasi-contract is a more general term, while quantum meruit is a specific procedure to recover on a quasi-contract:

> "[C]laims for the redress of unjust enrichment did not fit comfortably into either the category of contract or that of tort, they came to be described as claims in quasi-contract. Some of them were originally characterized as being in quantum meruit (as much as he deserved), a form of action used for claims to payment for services. This procedural term has persisted and is sometimes used inexactly as a synonym for the more general term quasi-contract, which refers to any money claim for the redress of unjust enrichment." Black's Law Dictionary 370 (9th ed. 2009) (quoting E. Allan Farnsworth, Contracts § 2.20 at 148 (2d ed. 1990)) (defining implied-in-law contract).

- 7 -

670, 673 (R.I. 1997)); Black's Law Dictionary 1361-62 (noting that quantum meruit compensates "a person who has rendered services in a quasi-contractual relationship"). To recover in quasi-contract, a plaintiff must prove that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof." Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 97 (R.I. 1992) (quoting Hurdis Realty, Inc. v. Town of North Providence, 121 R.I. 275, 278, 397 A.2d 896, 897 (1979)).

The first issue raised by DiGregorio essentially attacks the sufficiency of the evidence presented by Process. The sum total of law cited by both parties, across four submissions to this Court on this issue, comes from a single paragraph in one of our opinions. The entirety of that paragraph is as follows:

> "Assuming that the fair value of the job turned out to be more than the contract price, plaintiff failed to show that any of the excess value was due to defendant's actions, a changed condition, or an unforeseen condition. To recover plaintiff must attribute its loss to something other than its own actions. There is nothing in the record to suggest that plaintiff merely underbid the contract, or that plaintiff's own decision to grout to two feet below ground elevation and to grout the backfill resulted in its extra costs. Furthermore, plaintiff failed to show that excess costs were not attributable to plaintiff's own inefficiencies, poor job preparation, and management techniques." Fondedile, 610 A.2d at 97.

DiGregorio argues that this paragraph means that, to recover in quantum meruit, Process was required to prove that (1) the excess costs were due to defendant's actions, a changed condition, or an unforeseen condition; (2) its loss was attributable to something other than its own actions; and (3) the excess costs were not attributable to plaintiff's own inefficiencies, poor job

preparation, and management techniques.[8]  Process contends that this paragraph means that Process only had to prove the second and third elements above—basically proof by plaintiff that the loss was not plaintiff's fault.  Reduced to its core, the question is whether Process only had to prove that it was not responsible for the loss or whether Process also had to prove what caused the loss.  We hold that Process was required to prove only that it was not at fault for the loss; it did not need to prove who was at fault.

We are satisfied that competent evidence supports the trial justice's finding that Process "was able to show that the additional costs in replacing the damaged pipe were not attributed to [p]laintiff's own inefficiencies or job preparation."  From the testimony and arguments of the parties, this Court can cull out three undisputed facts: it was Process's responsibility to "protect" the pipe, it was DiGregorio's responsibility to "dewater" the trench where the pipe was laid, and the insulation within the pipe got wet.[9]  The trial justice's conclusion that damage to the pipe was not the fault of Process is supported by the following evidence: the pipes were transported via truck with a plastic protectant that the manufacturer provided to protect the pipe; a higher grade protectant may have exceeded the manufacturer's specifications; Process was not responsible for

---

[8] According to DiGregorio, these requirements were in addition to proof that Process actually repaired the pipe, which DiGregorio does not appear to challenge, and that the related charges were reasonable, which is discussed below.

[9] From our review of the record, except for Barbanti's opinion about Process's protection of the pipe, there is little elaboration on the meaning of "protect" or "dewater," or where one responsibility begins and the other ends.  This is another gap in the record that makes this case difficult for the Court.  In their supplemental Rule 12A statements on appeal, the parties began arguing about what constitutes "hydrostatic testing."  DiGregorio stated that "no one disputes" that a hydrostatic test involves water.  Process responded, "The hydrostatic test uses air, not water," and cited to a portion of the transcript, which discussed an air pressure test, <u>not</u> a hydrostatic test.  This Court need not, and will not, decide the details of hydrostatic testing and its relevance to this case because the record is devoid of competent evidence on the issue.  The lesson here is that when parties come to this Court with a deficient record, this Court's ability to comprehensively analyze the issues is difficult to achieve.  Nevertheless, we are stuck with this record and will render a decision based only upon it.

dewatering the trench; and Silvia testified that "[t]he way [the pipe] was designed, there was no way you could keep it free of water cause of the traps" and that the ends of the inside pipe were not supposed to be capped.[10] From this evidence, the trial justice reasonably could find that Process sufficiently protected the pipe, such that the excess costs were not attributable to Process. This Court will not disturb that finding. See Wellington Condominium Association, 68 A.3d at 599 (noting that this Court will not substitute its view of the evidence for that of the trial justice if competent evidence supports the trial justice's findings). Although the trial justice noted that a rainstorm had occurred, as mentioned during Process's opening statement and no proof of rain was presented at trial, Process was not required to prove how the pipe was damaged or that it was DiGregorio's fault. Process's burden was only to show that it was not its own fault.

The second issue raised by DiGregorio attacks the evidence offered at trial supporting the amounts awarded in the judgment. DiGregorio argues that Process's back charges were not proven to be fair and reasonable or due and owing. We are satisfied that Process put forth sufficient evidence for the trial justice to conclude that the back charges were due and owing. The invoices on which the trial justice based the relief granted were in evidence. Silvia testified that Process was not paid for the work done on the replacement pipe, stating that he had attempted to obtain payment by sending an invoice. Additionally, DiGregorio's answer to

---

[10] Barbanti testified that Bond Brothers "may have" required protection levels in excess of the manufacturer's specifications. After this statement, Barbanti was confronted with exhibit No. 2—forty pages of specifications. Barbanti flipped through it and stated, "I'd have to review the entire thing. I mean, just general language in there. Yeah, I did notice something. It says protect from damage, water, dust, material, equipment, apparatus under this division." Asked about water and dust, however, he responded, "Just protection of materials, protection of materials." The trial justice then identified a page in exhibit No. 2. However, exhibit No. 2 is not in the materials filed with this Court. The trial justice, as factfinder, was permitted to disregard this testimony because it was confusing and imprecise.

interrogatory number 2, which was read by Enrico DiGregorio at trial, stated that DiGregorio disallowed payment to Process because Process "failed to [keep the pipes dry] and the insulation and pipe had to be removed and reinstalled." Enrico DiGregorio also testified that DiGregorio withheld $148,694.51.

DiGregorio also challenges the fairness and reasonableness of the costs of the services and asserts that it was Process's burden to prove that the value of the service provided was fair and reasonable. For this proposition, it cites Iannuccillo v. Material Sand and Stone Corp., 713 A.2d 1234, 1240 (R.I. 1998). In Iannuccillo, 713 A.2d at 1240, we concluded that there was "no basis for defendants to pursue damages under a theory of quantum meruit because defendants realized the fair and reasonable value of their services in direct proportion to the amount of sand and gravel removed from the site." Thus, the Court held that the party seeking quantum meruit had been compensated for the services rendered; it did not describe what type of proof was required to establish reasonable value in a quantum meruit action.[11] See id.

Our cases have addressed the requirement that, in a quantum meruit action, the value claimed must be fair and reasonable. See Salo Landscape & Construction Co. v. Liberty Electric Co., 119 R.I. 269, 274-75, 376 A.2d 1379, 1382 (1977) ("[A]n owner or prime contractor who fails to pay an installment due on a construction contract is guilty of a breach that goes to the essence of the contract and that entitles the injured party to bring an action based on a quantum meruit theory for the fair and reasonable value of the work done."); see also National Chain Co., 487 A.2d at 135 n.1 ("A representative of State Office Supply, from whom the wallcovering was purchased, testified at trial to the fair and reasonable value of the wallpaper."). However, we have not defined at what point the fairness and reasonableness aspect of quantum meruit enters

---

[11] For its part, Process cites no cases regarding the burden for proving reasonableness; in fact, it does not address the reasonableness of the charges in either of its submissions to this Court.

the case. According to a prominent construction law treatise, "When a prima facie case is properly proven, the burden of going forward—of proving that a recovery of incurred costs is unreasonable and excessive under the circumstances—shifts to the other party." 6 Philip L. Bruner and Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 19:39 at 157-58 (2002); accord 3 Steven G.M. Stein, Construction Law § 11.03[2][e][i] at 11-89 (2013) ("The contractor may recover all costs of performance which he incurred unless the owner proves those costs to be unreasonable * * *."). For purposes of the prima facie case, a plaintiff need only submit evidence of the value of the services; the factfinder is permitted to infer that the charges are fair and reasonable. A plaintiff is not required to put forth expert testimony on the reasonableness of the value of the services during his or her prima facie case. If a defendant wishes to contest the fairness or reasonableness of the value asserted by a plaintiff, the burden shifts to the defendant to prove that the charges are unreasonable.

Here, Process submitted invoices for work that it did. The trial justice was permitted to infer, based on the information contained in the invoices and the fact that DiGregorio had made payments to Process on other invoices in the course of this project, that the charges were fair and reasonable. DiGregorio failed to offer any proof that Process's charges were not reasonable. Indeed, it did not even challenge the reasonableness of the charges at trial. Although DiGregorio asserted that plaintiff "must proffer evidence substantiating the 'fair and reasonable' value of the charges presented" in its closing brief at trial, DiGregorio never argued that the charges were not fair or reasonable. It did not challenge the hourly rates, the number of hours worked, the costs of materials, or the charges for equipment.

- 12 -

Accordingly, the trial justice did not misapply the law, misconceive or overlook material evidence, or make factual findings that were clearly wrong. <u>See</u> <u>Lamarque</u>, 22 A.3d at 1139-40 (setting forth nonjury trial standard of review).

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers may be returned to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**　　　Process Engineers & Constructors, Inc. v. DiGregorio, Inc. et al.

**CASE NO:**　　　No. 2013-87-Appeal.
　　　　　　　　　　(PC 08-657)

**COURT:**　　　Supreme Court

**DATE OPINION FILED:**　July 1, 2014

**JUSTICES:**　　　Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**　　　Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**　　Providence County Superior Court

**JUDGE FROM LOWER COURT**:

　　　　　　　　　Associate Justice William E. Carnes, Jr.

**ATTORNEYS ON APPEAL:**

　　　　　　　　　For Plaintiff:  Christopher A. Anderson, Esq.

　　　　　　　　　For Defendant:  Jina Petrarca-Karampetsos, Esq.