**Supreme Court**

No. 2014-24-Appeal.
No. 2014-25-Appeal.
(WC 11-339)

South County Post & Beam, Inc.          :

                    v.                   :

Brian T. McMahon et al.                  :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-24-Appeal.
No. 2014-25-Appeal.
(WC 11-339)

South County Post & Beam, Inc.          :

v.                            :

Brian T. McMahon et al.              :

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  This case stems from the all-to-common scenario of an escalated billing dispute between property owners and a subcontractor hired to help construct a house.  Brian and Karen McMahon (defendants) engaged various construction companies to contribute to the project of building a house and barn on their Block Island property.  The plaintiff, South County Post & Beam, Inc., is one of the subcontractors which worked on the project.  The plaintiff filed a civil suit for breach of contract, book account, and unjust enrichment, seeking payment for the work it had completed but for which it had not been paid.  After a bench trial, a Superior Court justice entered judgment for the plaintiff on its claim of unjust enrichment, but judgment for the defendants on the plaintiff's claims of breach of contract and book account.  The trial justice also entered an order granting the plaintiff's posttrial "Application for Taxation of Costs" for the entire amount requested, including fees for the expert witness who testified on the plaintiff's behalf.  The defendants appealed from both the judgment and the order, and we consolidated the appeals.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.

- 1 -

After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the Superior Court's judgment, but vacate and remand the order.

# I

## Facts and Travel

In 2010, defendants bought approximately eleven acres of forested property on Block Island with the intention of building a house. They hired an architect who helped them select S. Heinz Construction & Design, Inc. (Heinz Construction) as the general contractor. During the process of designing the 2,500-square-foot house, defendant Brian McMahon testified that he and his wife decided to also build a barn as an "overflow room" for their three young-adult sons. At Heinz Construction's recommendation, defendants agreed that plaintiff, a company that specialized in timber frame design, fabrication, and installation, would be engaged to build the roof for the house, as well as to design and build the timber frame of the barn. In July 2010, Heinz Construction and plaintiff signed work orders describing the scope of the work that plaintiff was to perform on the house and barn. Over the next three months, Heinz Construction and plaintiff executed five change orders relating to the scope of the work for the barn. During this time, plaintiff also performed work outside the scope of the initial work order for the roof of the house—viz., the construction of a tower and deck on the roof of the house—but this additional work was not memorialized in a change order. Throughout its work on the house and barn, plaintiff addressed all of its invoices and statements to Heinz Construction. Heinz Construction sent two payments to plaintiff, and, at Heinz Construction's request, defendants sent one payment directly to plaintiff. Between October and December 2010, plaintiff, defendant

- 2 -

Brian McMahon, and Heinz Construction exchanged several emails regarding the outstanding balances claimed by plaintiff.

In May 2011, plaintiff initiated a civil action against defendants, seeking damages for breach of contract (count 1), book account (count 2), and unjust enrichment (count 3). The defendants counterclaimed for breach of the duty to perform in a good and workmanlike manner and breach of contract. In October 2013, a two-day bench trial was held before a justice of the Superior Court.[1] Before trial, the parties filed an agreed statement of facts, which included the parties' agreement that plaintiff's total unpaid invoices equaled $41,549.45. During the trial, plaintiff presented testimony from two fact witnesses, Kenneth Bouvier (plaintiff's founder and president) and Dennis Scott Heinz (Heinz Construction's principal), and one expert witness, Robert L. Brungraber, Ph.D., a civil engineer in the field of heavy timber structures. Brian McMahon testified on behalf of defendants.

Kenneth Bouvier testified that plaintiff became involved in the construction of the roof tower and deck on the house—work beyond the scope of the executed work orders—through conversations with Heinz. Bouvier also testified that a change order was not created for the roof tower work because, "based on a good relationship with [Heinz], and the fact that these were areas that we were going to support him on, we just went forward, basically, on a time-and-material basis." In October 2010, plaintiff delivered an invoice to Heinz Construction that detailed the work plaintiff performed to advance the construction of the roof tower and deck.

Bouvier further testified that, after receiving two payments for plaintiff's work from Heinz Construction, he was told by Heinz that he "would be getting paid directly from

---

[1] The only counts that went to trial were breach of contract (count 1) and unjust enrichment (count 3). Prior to trial, plaintiff withdrew the book account claim (count 2), and defendants dismissed their two counterclaims.

[defendants]." Bouvier recalled receiving only one payment directly from defendants. Bouvier testified that he had received compliments from McMahon on plaintiff's work, and that he did not recall receiving any criticism about plaintiff's work prior to the billing dispute. Bouvier also testified that plaintiff had future work with Heinz Construction scheduled and that some projects were in the proposal stage.

Dennis Scott Heinz, Heinz Construction's principal, testified that he had sought defendants' review of the work orders and change orders throughout the construction project by forwarding the documents which he had received from Bouvier by email to McMahon and then securing McMahon's approval by email. In the agreed statement of facts, the parties stated that plaintiff had received only two payments from Heinz Construction for the work it had performed on defendants' property: $20,000 paid on July 29, 2010, and $24,012.50 paid on August 28, 2010. Heinz testified that he was not aware of any other payments from Heinz Construction to plaintiff for the work which plaintiff performed on defendants' house and barn. Heinz also testified that he had asked McMahon to pay plaintiff directly one time because "the scope of work changed, and they added the barn, and I was financing a lot of it myself, so I couldn't afford to pay everything out of my pocket." Heinz recalled that defendants had timely paid many invoices that he had submitted to them on behalf of Heinz Construction. Heinz also testified that Heinz Construction did not make any profit from the work plaintiff performed on defendants' property because he had not added any markups to plaintiff's work before billing defendants, so that it made no difference to Heinz Construction whether defendants paid plaintiff directly or whether defendants paid Heinz Construction, which then paid plaintiff.

Robert L. Brungraber, plaintiff's expert witness, testified that he operated a company that provided structural engineering consultations, design, and analysis on traditional heavy timber

structures. In preparation for his testimony in this case, Brungraber testified that he had reviewed various engineering drawings created by plaintiff as well as various work orders, change orders, purchase orders, and invoices. Brungraber repeatedly opined that the amounts plaintiff charged for each component it had designed and constructed were "very reasonable"; and, while sometimes at the low end of the reasonable price range for each component, they were always within the range that he would have charged in the twenty years that he had worked for a company that engaged in work similar to plaintiff's work.

Brian McMahon testified that Heinz's request in September 2010 that defendants make a $60,100 payment directly to plaintiff was the only time that Heinz had made this request, as well as the only time that McMahon had paid plaintiff directly. McMahon also testified that he had thought that Heinz Construction would be responsible for all of plaintiff's charges from that point forward. McMahon further testified that he had made payments directly to other subcontractors when Heinz had requested that of him, that he had not paid any of the other subcontractors in full for the entire scope of their work, and that none of the other subcontractors had approached him for payment on the final invoices prior to the termination of his business relationship with Heinz Construction.

McMahon also testified that, a few weeks after the $60,100 payment, Bouvier communicated by email that he was "completing the accounting for your project and [would] forward details to [you] by the end of the week." McMahon replied: "[a]s to accounting didn't we agree pricing [sic] already for the project both the barn and the house[.] What would the accounting be?" McMahon testified that he subsequently received the "accounting" from plaintiff—which reflected over $30,000 as the balance owed—was "shocked," and had spoken with Heinz about it. McMahon also acknowledged that, after this email exchange, he had sent

Bouvier an email that stated: "Saw how you did the tower – looks great and clever bracket as well! [Heinz] just sent me some barn pics – looks really great. Thanks for the craftsmanship." McMahon also testified that he received a direct request from Bouvier for final payment on November 22, 2010, and that this request had prompted an "e-mail conversation" in which McMahon asked Bouvier specific billing questions.

The trial justice rendered her decision from the bench the day after the trial concluded. She found that each of the four witnesses were, "to a large extent," credible. She specifically adopted each of the paragraphs in the agreed statement of facts as a finding of fact. With respect to plaintiff's claim for breach of contract, the trial justice entered judgment for defendants because she found that the evidence did not support the existence of a contract between the parties—either express or implied-in-fact. With respect to plaintiff's claim for unjust enrichment, the trial justice found that plaintiff had established that it conferred a benefit on defendants valued at $41,549.45, that defendants had appreciated the benefit of plaintiff's work, and that it would be unjust for defendants to "retain the benefit without paying the value thereof." Accordingly, the trial justice entered judgment for plaintiff and awarded $41,549.45 plus costs. Final judgment entered on October 15, 2013, and defendants timely appealed.

The plaintiff subsequently filed an "Application For Taxation of Costs" that included the filing fee, the costs of four deposition transcripts, the service of one subpoena, and the fee for expert witness Brungraber. The defendants objected to including Brungraber's fee, but the trial justice granted plaintiff's application in its entirety, finding that all of the costs listed were "fair and reasonable and necessary in this particular case * * *." The defendants timely appealed, and this Court consolidated the appeal from the order granting plaintiff's application for costs with

the appeal from the judgment entered against defendants on plaintiff's claim of unjust enrichment.

## II

## Judgment Awarding Damages for Unjust Enrichment

### A

### Standard of Review

When a trial justice presides over a nonjury trial, Rule 52(a) of the Superior Court Rules of Civil Procedure requires that he or she "find the facts specially and state separately [his or her] conclusions of law thereon." "The trial justice, however, 'need not engage in extensive analysis to comply with this requirement.'" JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1141 (R.I. 2014) (quoting Connor v. Schlemmer, 996 A.2d 98, 109 (R.I. 2010)). "This Court has recognized that [a] trial justice's analysis of the evidence and findings in the bench trial context need not be exhaustive * * *." Id. (quoting Notarantonio v. Notarantonio, 941 A.2d 138, 144 (R.I. 2008)). "[I]f the decision reasonably indicates that [the trial justice] exercised [his or her] independent judgment in passing on the weight of the testimony and the credibility of the witnesses it will not be disturbed on appeal unless it is clearly wrong or otherwise incorrect as a matter of law." Id. (quoting Notarantonio, 941 A.2d at 144-45).

Additionally, "[i]t is well settled that [t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *." JPL Livery Services, Inc., 88 A.3d at 1141 (quoting Reagan v. City of Newport, 43 A.3d 33, 37 (R.I. 2012)). "On review, '[w]e accord great weight to a trial justice's determinations of credibility, which, inherently, are the functions of the trial court and not the functions of the appellate court.'" Id. at 1142 (quoting Cullen v.

Tarini, 15 A.3d 968, 976 (R.I. 2011)). When "the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." Id. (quoting Reagan, 43 A.3d at 37). "We will, however, review questions of law de novo." Id.

**B**

**Discussion**

Unjust enrichment is "[t]he retention of a benefit conferred by another, who offered no compensation, in circumstances where compensation is reasonably expected." Black's Law Dictionary 1771 (10th ed. 2014). "Instances of unjust enrichment typically arise * * * when a benefit is conferred deliberately but without a contract * * *." Id. "The resulting claim of unjust enrichment seeks to recover the defendant's gains." Id. It is well settled in our state that, "[t]o recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof." Emond Plumbing & Heating, Inc. v. BankNewport, 105 A.3d 85, 90 (R.I. 2014) (quoting Dellagrotta v. Dellagrotta, 873 A.2d 101, 113 (R.I. 2005)).

Quantum meruit is a slightly different, but closely related, cause of action that warrants some discussion and consideration in this case. A Latin term for "as much as he has deserved," quantum meruit is defined as "[a] claim or right of action for the reasonable value of services rendered." Process Engineers & Constructors, Inc. v. DiGregorio, Inc., 93 A.3d 1047, 1052 (R.I. 2014) (quoting Black's Law Dictionary 1361, 1362 (9th ed. 2009)). "Such an action permits recovery of damages 'in an amount considered reasonable to compensate a person who has

- 8 -

rendered services in a quasi-contractual relationship.'" Id. (quoting Black's Law Dictionary at 1361-62). We have recently stated that a plaintiff may recover in an action in quantum meruit if the plaintiff can show that a defendant "derived some benefit from the services and would be unjustly enriched without making compensation therefor." Id. (quoting National Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985)). While the term "unjustly enriched" is included "as a requirement for recovery under a quantum meruit theory," we have described the nuanced distinction between unjust enrichment and quantum meruit as follows: "While unjust enrichment focuses on the propriety of a payee or beneficiary retaining funds or a benefit, quantum meruit's primary focus is on the value of services rendered." Id. at 1052 (quoting Parnoff v. Yuille, 57 A.3d 349, 355 n.7 (Conn. App. Ct. 2012)). "Quantum meruit generally applies 'in a situation in which the plaintiff has provided services to the defendant for which the defendant has refused to pay.'" Id. at 1053 (quoting Parnoff, 57 A.3d at 355 n.7).

"Although we note the distinction between unjust enrichment and quantum meruit, both doctrines are quasi-contractual theories." Process Engineers & Constructors, Inc., 93 A.3d at 1053. "[A]ctions brought upon theories of unjust enrichment and quasi-contract are essentially the same." Multi-State Restoration, Inc. v. DWS Properties, LLC, 61 A.3d 414, 418 (R.I. 2013) (quoting Bouchard v. Price, 694 A.2d 670, 673 (R.I. 1997)). The elements that a plaintiff must prove to prevail on a claim for unjust enrichment are identical to—and indeed were derived from—the elements required to recover in quasi-contract. See Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 97 (R.I. 1992); R & B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1355-56 (R.I. 1984); Bailey v. West, 105 R.I. 61, 67, 249 A.2d 414, 417 (1969). Therefore, to recover on a claim for quantum meruit, a plaintiff must prove the same three elements as in a claim for unjust enrichment. See Dellagrotta, 873 A.2d at 113. While plaintiff in this case styled

its cause of action as one for unjust enrichment, we undertake this brief discussion of the distinction between quantum meruit and unjust enrichment to point out that plaintiff is actually seeking to recover the value of the services rendered for which defendants have thus far declined to pay, i.e., to recover in quantum meruit. See Process Engineers & Constructors, Inc., 93 A.3d at 1052. The issue here is whether defendants would be unjustly enriched if they did not have to compensate plaintiff for the value of the services rendered, and not whether it would actually be proper for defendants to retain the benefit of plaintiff's work on their new house and barn.

The defendants' appeal from the judgment entered against them does not challenge the trial justice's findings and conclusions with respect to the first two elements of plaintiff's claim, i.e., that defendants had appreciated the work that plaintiff performed in constructing portions of the house and barn. The defendants raise issues only with respect to the trial justice's conclusion on the third element that it "would be unjust for the [d]efendant to retain the benefit conferred by the [p]laintiff without paying the value thereof," arguing both that the trial justice failed to make any findings of fact specific to this third element and that plaintiff failed to prove defendants' enrichment was unjust. The plaintiff counters simply that the trial justice "correctly recited, and found, the three elements that a Rhode Island plaintiff must prove to recover on a claim of unjust enrichment."

We can easily dispense with defendants' argument that the trial justice did not make any factual findings that demonstrated defendants' enrichment from plaintiff's work was unjust. The trial justice rendered a comprehensive decision from the bench, in which she specifically acknowledged the requirements set out in Rule 52(a), recited plaintiff's burden of proof and the elements of each claim, listed the evidence on which she based her decision, made findings with respect to the credibility of the witnesses, made conclusions with respect to each element, and

specifically referred to the facts that supported her conclusion on each element. Specific to the third element, the trial justice recounted ample evidence to support her finding that it would be inequitable for defendants to retain the work plaintiff performed without paying the undisputed value thereof—including the timing and content of the emails exchanged between the parties and McMahon's testimony that he was aware that plaintiff continued to perform work on the property even as the parties were discussing account and billing questions in email correspondence.

We have previously acknowledged that "[s]imply conferring a benefit upon a landowner by a subcontractor is not sufficient to establish a claim for unjust enrichment." Emond Plumbing & Heating, Inc., 105 A.3d at 90 (quoting R & B Electric Co., 471 A.2d at 1356). "[T]he third prong of the analysis is the most important." Id. "[T]he court must look at the equities of each case and decide whether it would be unjust for a party to retain the benefit conferred upon it without paying the value of such benefit." R & B Electric Co., 471 A.2d at 1356. "Determining what constitutes a just or unjust result requires a trial justice to examine the facts of the particular case and balance the equities." Emond Plumbing & Heating, Inc., 105 A.3d at 90 (quoting Dellagrotta, 873 A.2d at 115).

In the case under review, there are facts that weigh on both sides of the equity balance. The existence of a contract between plaintiff and Heinz Construction is a factor that weighs against plaintiff recovering the value of its work from defendants. It appears to this Court that the only reason plaintiff has not attempted to collect the outstanding balance for its work on defendants' property under its contract with Heinz Construction is the undisputed fact that

- 11 -

plaintiff wants to maintain a good business relationship with Heinz Construction.[2]  On the other side of the equity scale is the undisputed fact that, upon request by Heinz Construction, defendant made a direct payment to plaintiff in the amount of $60,100, one of only three payments received by plaintiff before commencing this civil action.  In addition, the trial justice referenced the exchange of emails between McMahon and Bouvier, as well as McMahon's testimony that he was aware that such work was ongoing at the time of these communications.  We are persuaded, therefore, that competent evidence exists in the record to support the trial justice's conclusion that "it would be unjust for [defendants] to retain the benefit conferred by [plaintiff] without paying the value thereof."

The defendants also argue that the trial justice erred as a matter of law when she ruled that plaintiff did not have to prove that it lacked an adequate remedy at law before finding that defendants were unjustly enriched.  The defendants assert that plaintiff's adequate remedy at law was a cause of action against Heinz Construction, with whom it had established express contracts for its work—a remedy that plaintiff has not made any attempt to pursue.  The defendants also remind us that the parties agree that Heinz Construction remains an active, going concern; there is no evidence that Heinz Construction has either gone out of business or lacks the resources to pay its subcontractors.  The plaintiff counterargues that the trial justice was correct to reject this argument because Rhode Island recognizes unjust enrichment as a distinct cause of action for which money damages may be awarded to eliminate an unjust imbalance created by the conferral of a benefit to one party without compensation to the conferring party.

---

[2] We note that, in response to one of this Court's questions at oral argument, plaintiff's counsel stated that plaintiff had made a strategic decision not to include Heinz Construction as a defendant in its civil action because it wanted to continue working with Heinz Construction in the future.

"It is well established that '[r]ecovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them.'" Emond Plumbing & Heating, Inc., 105 A.3d at 90 (quoting Narragansett Electric Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006)); see also Multi-State Restoration, Inc., 61 A.3d at 418 (acknowledging plaintiffs' claims for quasi-contract and unjust enrichment as "equitable claims"); United Lending Corp. v. City of Providence, 827 A.2d 626, 632 (R.I. 2003) ("[i]t is true that claims for unjust enrichment sound in equity"). This Court has also held, however, that unjust enrichment "can stand alone as a cause of action in its own right." Dellagrotta, 873 A.2d at 113. Accordingly, as unjust enrichment and quantum meruit are treated as standalone causes of action, the presence or absence of an adequate remedy at law is simply one of the factors considered in the third element's balancing of the equities and is not determinative of whether plaintiff can or will prevail as a matter of law.[3]

In her decision, the trial justice rejected defendants' argument that plaintiff was required to prove the absence of an adequate remedy at law, stating:

> "In the absence of privity between the parties, a party is permitted to seek equity through this quasi-contractual theory of

---

[3] According to the Restatement (Third) Restitution and Unjust Enrichment § 4(2) at 27 (2011), "[a] claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." The comment to this Restatement section provides:

> "there is no requirement that a claimant who seeks any of the remedies described in this Restatement must first demonstrate the inadequacy of a remedy at law. An argument to the contrary should appear antiquated today * * *. If restitution to the claimant is accomplished exclusively by a judgment for money, without resort to any of the ancillary remedial devices traditionally available in equity but not at law, the remedy is presumptively legal." Id. cmt. a. at 28, cmt. d. at 32.

- 13 -

> unjust enrichment. This is a stand-alone cause of action which seeks money damages, and not equitable relief in the form of an injunction. It is the request for some form of equitable relief that warrants consideration of whether there's an adequate remedy at law, not simply whether the cause of action itself seeking money damages is founded upon equitable principles."

We agree with the trial justice. That a civil action for unjust enrichment is predicated upon an equitable principle does not convert this standalone cause of action into one for which only equitable remedies may apply. The plaintiff sought, and was awarded, a legal remedy permissible under Rhode Island law, i.e., monetary compensation for the value of the services it had rendered to defendants. The three elements for unjust enrichment and quantum meruit are well settled in our jurisprudence and do not include a requirement that the proponent of the claim prove that it lacks an adequate remedy at law.

Finally, defendants urge us to consider the potential public policy ramifications of affirming the trial justice's decision, arguing that "permitting the subcontractor to recover against the homeowner under this circumstance would render every property owner a de facto party to subcontracts executed by the general – the general and sub could substitute the homeowner as the obligor at their whim, at any time, without notice." We are mindful of these policy concerns, but we emphasize that proving a claim for restitution sounding in either quantum meruit or unjust enrichment involves a fact-specific balancing process in order to determine whether it would be unjust for the benefit recipient to retain either the benefit or the value of the benefit without making compensation therefor. See Emond Plumbing & Heating, Inc., 105 A.3d at 90; R & B Electric Co., 471 A.2d at 1356. Here, most of the facts were undisputed at trial, defendants had already paid plaintiff directly one time, and there was much direct communication between plaintiff and defendants regarding the billing statements and defendants' questions about these statements. As we stated above, the trial justice was not

- 14 -

incorrect as a matter of law in her analysis and conclusion that the third element of plaintiff's claim was met. The judgment in favor of plaintiff in the amount of $41,549.45 is, therefore, affirmed.

## III

### Taxable Costs

On defendants' appeal from the order awarding costs to plaintiff, they argue that the trial justice erred as a matter of law when she ruled that Brungraber's fee could be taxed as a cost of the cause of action. The defendants contend that the expert's fee was precluded as a recoverable cost by G.L. 1956 § 9-17-22. The defendants further contend that § 9-17-22, which specifically prohibits expert fees as a part of costs, should have been given precedence over G.L. 1956 § 9-22-18, which deals with the taxation of costs generally. The plaintiff counters that its application for costs was based on §§ 9-22-5 and 9-22-18 and that, pursuant to these statutes, the trial justice simply exercised her discretion in allowing Brungraber's fee as a recoverable cost.

### A

### Standard of Review

"This Court reviews questions of statutory construction and interpretation de novo." National Refrigeration, Inc. v. Capital Properties, Inc., 88 A.3d 1150, 1156 (R.I. 2014) (quoting Morel v. Napolitano, 64 A.3d 1176, 1179 (R.I. 2013)). "When construing a statute, our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Mendes v. Factor, 41 A.3d 994, 1002 (R.I. 2012) (quoting Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 259 (R.I. 2011)). "When the statutory language is clear and unambiguous, we give the words their plain and ordinary meaning." National Refrigeration, Inc., 88 A.3d at 1156 (quoting Morel, 64 A.3d at 1179). "'[S]tatutes relating to the same subject matter should be considered together so

- 15 -

that they will harmonize with each other and be consistent' with their general objective scope." Such v. State, 950 A.2d 1150, 1156 (R.I. 2008) (quoting State ex rel. Webb v. Cianci, 591 A.2d 1193, 1203 (R.I. 1991)). "When a specific statute conflicts with a general statute, our law dictates that precedence must be given to the specific statute." Warwick Housing Authority v. McLeod, 913 A.2d 1033, 1036-37 (R.I. 2007); see G.L. 1956 § 43-3-26.[4]

**B**

**Discussion**

In this case, the trial justice found that the fee generated by Brungraber's expert testimony was not "problematic," commenting that his testimony "was certainly helpful to the Court and necessary in this particular case," but that the issue was whether the fee "should be taxed as costs." After hearing arguments from both attorneys regarding which statute took precedence over the other, the trial justice granted plaintiff's application in its entirety, commenting that, "given that the matter is being appealed, * * * why don't you tack this on to your issues * * *. [P]erhaps the Supreme Court can tell us how to interpret the differences between those two statutes."

Section 9-17-22, entitled "Expert fees as costs," states that "[f]ees of experts, except as provided in the Rules of Evidence, shall not be allowed as part of the costs in any case in excess of the fees allowed for ordinary witnesses." This Court has previously held that "the payment of expert-witness fees is not normally recoverable in an award of costs made pursuant to G.L. 1956

---

[4] General Laws 1956 § 43-3-26 states that:

> "Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."

- 16 -

§ 9-22-5.[5] 'Costs are normally considered the expenses of suing another party, including filing fees and fees to serve process. Fees to pay expert witnesses would not be included in this definition of costs.'" Chiaradio v. Falck, 794 A.2d 494, 496 (R.I. 2002) (quoting Kottis v. Cerilli, 612 A.2d 661, 669 (R.I. 1992)). In Kottis, the trial justice entered a judgment awarding "costs" to the prevailing party without specifying whether the two expert witnesses' fees—which had been included in the prevailing party's motion—were included as part of the costs awarded. Kottis, 612 A.2d at 669. While we affirmed the judgment, we specifically noted that the award of any amount that encompassed the expert witnesses' fees would have been improper. Id. This dictum is consistent with § 43-3-26 because it gives precedence to § 9-17-22, which specifically prohibits recovering the fee of an expert as a cost (except as provided in the Rhode Island Rules of Evidence), over § 9-22-18, which provides general parameters for when a trial justice must "strike out and disallow" a cost to be taxed relating to the expense of witnesses.[6]

In the case before us, there is no doubt that the trial justice granted the plaintiff's application for costs for the full $2,535.80 requested, and that the order awarding costs explicitly included $1,365.20 for Brungraber's fee. Pursuant to § 9-22-18 and our prior discussions of the kinds of costs that are contemplated by § 9-22-5, including Brungraber's fee in the award of

---

[5] General Laws 1956 § 9-22-5, entitled "Recovery of costs by prevailing party" provides: "In civil actions at law, the party prevailing shall recover costs, except where otherwise specially provided, or as justice may require, in the discretion of the court."

[6] Section 9-22-18, entitled "Disallowance of unjustified costs—Costs for written evidence," states in its entirety:

> "The justice of any court, who shall examine and approve any bill of costs, shall strike out and disallow any sum that may be taxed or demanded for the expense of any witness, of any evidence whatsoever, that shall appear to the justice to be overcharged, frivolous, or not material to the issue of the cause; and no costs shall be allowed for any written evidence, unless the fees are noted thereon, or certified by the officer who issued or made out the written evidence."

taxable costs was in error. See Chiaradio, 794 A.2d at 496; Kottis, 612 A.2d at 669. Accordingly, we vacate the trial justice's order awarding the plaintiff's "Application for Taxation of Costs." We remand the application to the trial justice with an instruction to enter a new order awarding the costs of the action to the plaintiff in an amount that reflects all of the costs for which the plaintiff applied, except Brungraber's expert witness fee.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court on the plaintiff's claim for unjust enrichment, but we vacate and remand the order of the Superior Court granting the plaintiff's application for costs in its entirety. The record shall be returned to the Superior Court.

Justice Indeglia did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     South County Post & Beam, Inc. v. Brian T. McMahon et al.

**CASE NO:**     No. 2014-24-Appeal.
No. 2014-25-Appeal.
(WC 11-339)

**COURT:**     Supreme Court

**DATE OPINION FILED:**  June 5, 2015

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**WRITTEN BY:**     Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**     Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Neil P. Philbin, Esq.

For Defendants:  Kelly M. Fracassa, Esq.