**Supreme Court**

No. 2013-212-Appeal.
(NB 11-569)

Emond Plumbing & Heating, Inc., et al.      :

v.                              :

BankNewport.                  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Emond Plumbing & Heating, Inc., et al.    :

v.               :

BankNewport.           :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  Emond Plumbing & Heating, Inc. (Emond) and Tecta America New England, LLC (Tecta) (collectively the plaintiffs) appeal from a judgment of the Superior Court granting BankNewport's (defendant) motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment.  On appeal before this Court, the plaintiffs argue that the Superior Court erred when it analyzed their claims under the Uniform Commercial Code (UCC) and the equitable subordination framework applicable to priority disputes between secured and unsecured creditors.  Instead, the plaintiffs contend that their claims should have been analyzed under the theory of unjust enrichment.  In that regard, the plaintiffs aver that each of them has sufficiently demonstrated that it conferred a benefit upon the defendant, that the defendant appreciated the benefit, and that the defendant's acceptance of the benefit, without payment, would be inequitable and unjust.  Conversely, the defendant argues that it was not unjustly enriched because it neither received, nor did it appreciate, any benefit conferred by the plaintiffs.  Further, the defendant argues that it is not inequitable for a secured creditor to retain the benefit that it recovered arising from its contractual rights.  Finally, the defendant contends that a judgment in favor of the plaintiffs would do great damage to our jurisprudence because it

would effectively render a secured creditor's priority status meaningless. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

In May 2010, AIDG Properties, LLC (AIDG), a real-estate holding company managed by Anjan Dutta-Gupta (Dutta-Gupta), purchased premises located at 184 John Clarke Road, Middletown (the property). The property consisted of 5.15 acres of real estate and a 57,372-square-foot industrial office building. AIDG purchased the property in order to lease the majority of the office building to Advanced Solutions For Tomorrow, Inc. (ASFT), a related defense contracting firm. Dutta-Gupta was the principal of ASFT and the relationship between AIDG and ASFT has been described as that between a real-estate holding company and an operating company.

To finance the purchase of the property, and to obtain capital to perform certain necessary improvements to the building located thereon, AIDG obtained two loans from defendant. The first loan was in the amount of $2,516,000; it was intended to finance the acquisition of the property. That loan was secured by a first mortgage on the property, naming defendant as mortgagee. Further, AIDG obtained a second loan in the amount of $1,984,000, referred to as a bridge or construction loan, to help, in part, with financing the purchase of the property as well as funding the necessary improvements. The second loan was secured by a second mortgage on the property in favor of defendant. Both loans were personally guaranteed by ASFT, Dutta-Gupta, and his wife, Indrani Dutta-Gupta.

Necessary improvements included the replacement of the mechanical, or HVAC, systems, which was estimated to cost $400,000, as well as a total roof replacement, which was

estimated to cost $357,000. It soon became evident that an increase to the construction budget was required. As a result, on October 6, 2010, a loan modification was executed, increasing the construction budget and bringing the combined total amount of the first and second loans to $4,727,520.

On August 2, 2010, AIDG engaged ABC Building Corp. (ABC) to serve as the general contractor for the HVAC and roofing renovations. AIDG and ABC engaged in a competitive bidding process to solicit interested subcontractors to bid on the projects. After reviewing the bids that were submitted, ABC selected Emond to serve as the HVAC subcontractor based upon the company's bid and experience. As a result, on August 31, 2010, ABC and Emond entered into a subcontract agreement. The agreement provided that Emond was to remove the existing HVAC system as well as design, construct, and install a new system. The original subcontract price for the HVAC work was $400,000.[1]

Similarly, following a competitive bidding process, ABC selected Tecta to serve as the subcontractor for the new roof. On September 10, 2010, ABC and Tecta entered into an agreement that provided that Tecta was responsible for removing the existing roof and installing the new roof. The original subcontract price for the roofing work was $206,570.[2]

Emond and Tecta commenced the improvements, respectively, in September and October of 2010. Pursuant to the subcontract agreements, plaintiffs submitted monthly payment applications to ABC, describing in detail the work that had been completed during the preceding month. ABC then compiled the subcontractors' payment applications into a single, consolidated monthly payment application and forwarded it to AIDG. The consolidated payment application reflected all the work that had been performed by plaintiffs during the previous month.

---

[1] Two approved change orders brought Emond's final subcontract price to $413,428.
[2] Similarly, an approved change order raised Tecta's final subcontract price to $207,230.

Upon receipt of ABC's consolidated monthly payment application, AIDG transmitted the application to defendant for its review. The defendant engaged an inspector to review the completed work and to confirm that the work described in each payment application had, in fact, been satisfactorily completed. When defendant's inspector found the completed work to be in order, the requested distribution of the construction loan proceeds was approved and processed. Thereafter, the loan proceeds were disbursed to AIDG, which, in turn, paid the subcontractors for the previous month's work. Generally, this process took thirty days.

In accordance with the above-described procedure, plaintiffs submitted monthly payment applications to ABC. Emond submitted monthly payment applications from September 2010 to February 2011, requesting a total payment amount of $413,428.21.[3] The record discloses that Emond was paid only $94,668.02. Likewise, Tecta submitted monthly payment applications from October 2010 to February 2011, excluding the month of January, seeking a total payment amount of $186,507.[4] It is undisputed that Tecta received a total amount of $11,191.50. For some reason, plaintiffs' November payment applications were not timely transmitted; as a result, they were submitted along with the December payment application. At that time, Emond was owed $191,046.27; while Tecta was owed $174,883.50 for their November and December payment applications. The plaintiffs substantially completed the remaining renovations in January 2011.

The defendant's inspector reviewed the work described in the November and December payment applications and confirmed that the work had been satisfactorily completed. On February 3, 2011, defendant approved the requested distribution of the construction loan

[3] Emond's monthly payment applications are as follows: September: $28,440; October: $76,728.03; November: $155,572.77; December: $35,473.50; January: $73,486.09; and February: $43,727.82.
[4] Tecta's monthly payment applications are as follows: October: $11,191.50; November: $138,996; December: $35,887.50; and February: $432.

- 4 -

proceeds to AIDG. The following day, defendant deposited the loan proceeds in the total requested amount of $497,327.66 into AIDG's account.

Several days later, and before any further funds had been disbursed to plaintiffs, defendant learned that Dutta-Gupta had been arrested based on allegations that he bribed a government official in connection with defense contracts that had been procured by ASFT. Almost immediately, ASFT laid off all its employees and ceased operations. The defendant then declared Dutta-Gupta's arrest to be an event of default because it constituted a material adverse change in the circumstances of AIDG and its guarantors. Therefore, under the terms of the loan documents, defendant accelerated the loans, making the full amount immediately due and payable.

Then, on February 8, 2011, defendant set off the February 4, 2011, deposit of $497,327.66 that had been made into AIDG's account by "reversing" it. Similarly, pursuant to the terms of the personal guaranties, defendant set off the bank accounts of ASFT and Dutta-Gupta.

As a result of defendant's setoff and reversal of the February 4, 2011, deposit, AIDG was unable to pay plaintiffs for the work they had performed. Indeed, plaintiffs have received no compensation since the October payment applications. As a result, there is no dispute that Emond is owed a total amount of $318,760.19 and Tecta $196,038.50 for materials and labor.

On February 15, 2011, defendant filed a complaint in Newport County Superior Court, asserting that it would be irreparably harmed if the property were to remain unsecured and unprotected. The defendant also filed a motion for injunctive relief, seeking to enjoin all parties from entering the property. A justice of the Superior Court issued an order granting defendant possession of the property and denying all others access to it. At one point, Emond requested

that defendant allow its employees to enter the property and retrieve the HVAC equipment that it had installed, but for which it had not been paid. However, defendant denied Emond's request, stating that it was unable to grant access without approval from the Superior Court.

On February 16, 2011, defendant commenced foreclosure proceedings against AIDG. Shortly thereafter, AIDG filed for bankruptcy protection in the Northern District of Georgia.[5] As a result, defendant discontinued its foreclosure proceedings.

In an effort to be remunerated, plaintiffs and ABC initiated mechanic's lien proceedings against AIDG in the Superior Court. The defendant responded in each of the mechanic's lien proceedings by filing an account and claim. Thereafter, on July 18, 2011, defendant obtained permission from the United States Bankruptcy Court to foreclose on the property. The following day, defendant filed petitions for permission to foreclose in each of the pending mechanic's lien proceedings pursuant to G.L. 1956 § 34-28-16.1.[6] The plaintiffs did not file objections to defendant's petitions to foreclose. On July 29, 2011, defendant's petitions were heard by a justice of the Superior Court, who granted defendant permission to foreclose on the property. The defendant then re-initiated its foreclosure proceedings.

On September 15, 2011, Emond notified defendant of its equitable lien against any foreclosure proceeds. The following day, defendant conducted the foreclosure sale. At the sale, it was announced that the mortgage that was being foreclosed was the second mortgage, putting prospective bidders on notice that, if they purchased the property, they would do so subject to the

---

[5] AIDG filed for bankruptcy in the Northern District of Georgia because that was the location of its corporate headquarters.

[6] General Laws 1956 § 34-28-16.1 provides in pertinent part that:

> "the holder of a mortgage having a priority over [mechanics'] liens * * * may petition the court to exercise the power of sale contained in the mortgage and the court shall grant the petition to foreclose, after notice to all interested parties and hearing thereon, upon a showing by the mortgagee that the mortgage is valid, entitled to priority and is in default * * *."

outstanding first mortgage. The defendant prevailed at the foreclosure sale, with an opening credit bid of $1,000,000. On October 27, 2011, defendant recorded its foreclosure deed in the Middletown Land Evidence Records. Thereafter, defendant made a decision that it would retain the property and use it for its corporate headquarters.

On November 15, 2011, plaintiffs filed a complaint in Newport County Superior Court, seeking to recover compensation for their work under the theory of unjust enrichment. The defendant answered the complaint and eventually, on September 17, 2012, it filed a motion for summary judgment. The plaintiffs objected to defendant's motion for summary judgment and filed a cross-motion for summary judgment. On May 29, 2013, a written decision was filed by a justice of the Superior Court, finding as a matter of law that defendant "was not unjustly enriched by any improvements the [p]laintiffs made to the premises when it purchased [the property] at foreclosure." Accordingly, the court granted defendant's motion for summary judgment and denied plaintiffs' cross-motion for summary judgment. On June 4, 2013, judgment entered in favor of defendant. The plaintiffs timely filed a notice of appeal.

**II**

**Standard of Review**

"This Court reviews de novo a trial justice's decision granting summary judgment." Sola v. Leighton, 45 A.3d 502, 506 (R.I. 2012) (quoting Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 424 (R.I. 2009)). "Summary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" Id. (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005)). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving

party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." Id. (quoting National Refrigeration, Inc. v. Standen Contracting Co., 942 A.2d 968, 971 (R.I. 2008)).

### III

### Discussion

The plaintiffs aver that they have sufficiently demonstrated that they conferred a benefit upon defendant, that defendant appreciated the benefit, and that defendant's acceptance of the benefit, without payment, would be inequitable and unjust.[7] On the other hand, defendant asserts that it was not unjustly enriched because it neither received, nor did it appreciate, any benefit conferred by plaintiffs. Further, defendant argues that unjust enrichment is inapplicable because it is not inequitable for a secured creditor to retain the benefit that is recovered arising from the enforcement of its contractual rights. Finally, defendant contends that a judgment in favor of plaintiffs would effectively render a secured creditor's priority status meaningless.

It is well established that "[r]ecovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them." Narragansett Electric Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006) (citing R & B Electric Co. v. Amco Construction Co., 471 A.2d 1351, 1355 (R.I. 1984)). "To recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such

---

[7] At the outset, plaintiffs argue that the Superior Court erred because it analyzed their claims under the UCC and the equitable subordination framework applicable to priority disputes between secured and unsecured creditors. Instead, plaintiffs contend that their claims should have been analyzed under the theory of unjust enrichment. We do not agree with plaintiffs' contention that the hearing justice analyzed the complaint under the UCC and equitable subordination framework. Rather, it is our opinion that our case law on unjust enrichment is dispositive of the instant action.

circumstances 'that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.'" Dellagrotta v. Dellagrotta, 873 A.2d 101, 113 (R.I. 2005) (quoting Bouchard v. Price, 694 A.2d 670, 673 (R.I. 1997)). This Court has previously explained that the third prong of the analysis is the most important. Narragansett Electric Co., 898 A.2d at 100. "Determining what constitutes a just or unjust result requires a trial justice to examine the facts of the particular case and balance the equities." Dellagrotta, 873 A.2d at 115 (citing R & B Electric Co., 471 A.2d at 1356). We have acknowledged that "[s]imply conferring a benefit upon a landowner by a subcontractor is not sufficient to establish a claim for unjust enrichment." R & B Electric Co., 471 A.2d at 1356.

The parties disagree as to whether the first two prongs of the unjust enrichment analysis have been satisfied. The plaintiffs argue that a benefit was conferred upon defendant because it was their unpaid labor and materials that increased the value of defendant's collateral. Additionally, plaintiffs argue that defendant has appreciated and retained the benefit because it purchased the property at foreclosure and opted to use the improved building as its corporate headquarters. Conversely, defendant argues that it was not the recipient of a benefit conferred by plaintiffs because it did not own the property at the time the work was performed and it did not have any contractual relationship with plaintiffs. We will assume, without deciding, that plaintiffs have satisfied the first two prongs of the unjust-enrichment analysis. We do so because it is our opinion that the third prong of the analysis is dispositive, and we turn our attention to that to determine whether it would be inequitable for defendant to retain any benefit without paying for the value thereof.

The plaintiffs argue that it would be inequitable for defendant to retain undisbursed portions of the construction loan, which it reversed and remitted to itself, as well as the improved

- 9 -

collateral, because it is contrary to the purpose underlying the construction loan and the expectations of the parties. As support for its argument, plaintiffs cite Providence Steel & Iron Co. v. Flammand, 413 A.2d 487 (R.I. 1980); however, in our opinion, that case is distinguishable from the present situation on at least two grounds. In Flammand, 413 A.2d at 487, the plaintiff, a subcontractor, brought an unjust enrichment action against a general contractor and landowner seeking to recover the value of materials that it had furnished. The evidence revealed that the general contractor had informed the landowner that the subcontractor had not been compensated. Id. at 488. Nonetheless, the landowner used the construction loan proceeds that had been earmarked for the subcontractor to pay other subcontractors on unrelated projects. Id. Based upon the landowner's actions, this Court affirmed the trial justice's finding that the landowner had been unjustly enriched. Id.

The plaintiffs also rely upon Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 72 Fed. App'x. 916 (4th Cir. 2003); but again, that case is readily distinguishable from the case before us. In Metric, the plaintiff contracted with the landowner to serve as the general contractor on a major construction project. Id. at 918. Under the terms of the construction contract, payments were made directly to the plaintiff by the lender, as opposed to the scenario here, where the lender released funds to the landowner who, in turn, was to pay plaintiffs. Id. at 918-19. At some point, the lender became aware of the landowner's financial difficulties and impending default but, nevertheless, induced the plaintiff to continue working. Id. at 919-20. Thereafter, the lender ceased funding the project, foreclosed on the collateral, and refused to tender payment to the plaintiff for the work performed. Id. Based upon those facts, the court found that the lender was liable to the plaintiff for unjust enrichment. Id. at 924.

Finally, plaintiffs seek support from the holding in <u>J.G. Plumbing Service, Inc. v. Coastal Mortgage Co.</u>, 329 So. 2d 393, 396 (Fla. Dist. Ct. App. 1976). In that case, the court held that a construction lender may be held liable if it "affirmatively mislead[s] subcontractors and materialmen so as to induce them to continue to work upon and supply materials to the job to their detriment." <u>Id.</u> at 396. Thus, the plaintiff's recovery was predicated upon the lender's fraud and misrepresentations.[8] <u>Id.</u>

Here, it is undisputed that the plaintiffs were neither in a contractual relationship with the defendant nor were they paid directly by the defendant. Instead, the plaintiffs contracted with AIDG which, under the terms of that agreement, was the party responsible for tendering payment. In addition, the plaintiffs have made no suggestion on the record that the defendant engaged in any type of misconduct including, but not limited to, fraud, misrepresentation, or bad faith. The record reveals that on February 4, 2011, the defendant fully disbursed the loan proceeds that had been requested in the November and December payment applications to AIDG to compensate the plaintiffs for their work. Several days later, Dutta-Gupta was arrested on bribery charges, constituting a material adverse change that was an event of default as defined in the loan documents. This caused the defendant to leverage its contractual right, a right no party has disputed, to set off AIDG's bank account and reverse the February 4, 2011, deposit. Thereafter, the defendant exercised its rights as a secured creditor to foreclose on the property.[9]

---

[8] Our review of the case law reveals a consistency concerning unjust enrichment actions prosecuted by subcontractors against construction lenders. <u>See</u> <u>Twin City Construction Co. of Fargo, N.D. v. ITT Industrial Credit Co.</u>, 358 N.W.2d 716, 719 (Minn. Ct. App. 1984) (lender's liability premised upon its exploitation of subcontractor's weakened position); <u>Irwin Concrete, Inc. v. Sun Coast Properties, Inc.</u>, 653 P.2d 1331, 1335 (Wash. Ct. App. 1982) (lender's misrepresentations and inducement of subcontractor to continue working despite knowledge of the landowner's pending foreclosure justified liability); <u>Gee v. Eberle</u>, 420 A.2d 1050, 1063 (Pa. Super. Ct. 1980) (lender found liable based upon misrepresentations made to subcontractors).

[9] <u>See</u> <u>Ostroff v. Federal Deposit Insurance Corp.</u>, 847 F. Supp. 270, 277 (D.R.I. 1994) (holding that bank was not unjustly enriched when it foreclosed on its collateral and purchased the

Based upon these facts, the most important of which are the absence of a relationship between the plaintiffs and the defendant and the lack of any allegation that the defendant engaged in any type of misconduct or fraud, the defendant's retention of the property, including the improvements thereon, was not inequitable under our jurisprudence on unjust enrichment.

## IV

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which the papers in the case may be remanded.

---

property at the foreclosure sale without paying the subcontractor for the improvements thereon because "[r]equiring [the bank] to pay those unsecured parties would render its status of secured creditor meaningless"); <u>Rhode Island Hospital Trust Co. v. Rhode Island Covering Co.</u>, 96 R.I. 178, 180, 190 A.2d 219, 221 (1963) (holding that bank was not unjustly enriched when the "benefit it has received was acquired by virtue of its status as a secured creditor").



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## Clerk's Office Order/Opinion Cover Sheet

**TITLE OF CASE:**    Emond Plumbing & Heating, Inc., et al. v. BankNewport.

**CASE NO:**    No. 2013-212-Appeal.
(NB 11-569)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    November 28, 2014

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**    Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Christopher H. Little, Esq.

For Defendant:  Neil P. Galvin, Esq.