March 19, 2021

**Supreme Court**

No. 2018-340-Appeal.
(NC 05-177)

IDC Clambakes, Inc.  :

v.  :

Dennis J. Carney, in his capacity as  :
Trustee of the Goat Island Realty
Trust, et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

IDC Clambakes, Inc.        :

v.        :

Dennis J. Carney, in his capacity as   :
Trustee of the Goat Island Realty
Trust, et al.

Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**   The plaintiff, IDC Clambakes, Inc.

(Clambakes), appeals from an October 29, 2018 final judgment of the Newport

County Superior Court following a grant of a motion for summary judgment filed

by the defendants—*viz.*, the individual unit owners of the Goat Island South

Condominium (GIS Condominium)[1] and the Goat Island South Condominium

Association, Inc. (GISCA).  On appeal, the plaintiff contends that the hearing justice

erred in his September 26, 2018 written decision, wherein he held that the

---

[1]     Given the fact that the list of names of the individual unit owners is lengthy and is already a part of the record in this case, we will not recite it here.

defendants' motion for summary judgment should be granted on the basis of: (1) the hearing justice's conclusion that Clambakes had "failed to demonstrate that it would be unjust for the Defendants to receive any benefit or that it conferred a benefit upon the Defendants;" and (2) his conclusion that Clambakes' quasi-contract claims were barred by the doctrine of *res judicata*. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

The conflict which forms the basis of the dispute between the parties in this case is not new to this Court. The seemingly eternal saga surrounding these condominiums and their common elements—including the event space at issue in this case—has come before this Court on numerous occasions. *See, e.g.*, *IDC Properties, Inc. v. Goat Island South Condominium Association, Inc.*, 128 A.3d 383 (R.I. 2015); *America Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117

(R.I. 2004) (hereinafter referred to as *America I*), *aff'd on reh'g by America Condominium Association, Inc. v. IDC, Inc.*, 870 A.2d 434 (R.I. 2005) (hereinafter referred to as *America II*). Because the facts have been presented in painstaking detail in our previous opinions, we will recount only those facts that are absolutely necessary to the resolution of this case. In so doing, we rely primarily on the decision of the hearing justice, our previous opinions, and other documents in the record.

On January 13, 1988, Globe Manufacturing Co. (Globe) recorded a declaration of condominium, which created the GIS Condominium that is at issue in this case. According to the trial justice's decision in the instant case, Thomas Roos is the president, vice president, director, and sole shareholder of Globe's successor declarants—Island Development Corporation, Inc. (IDC) and IDC Properties, Inc. (Properties).[2] He is likewise the president and sole shareholder of Clambakes. The GIS Condominium included three undeveloped parcels. It is the unit entitled "the North Development Unit," sometimes referred to in this litigation as "the Reserved Area," which forms the basis of this dispute. The Reserved Area is a waterfront parcel of land with an unobstructed view of Narragansett Bay.

---

[2]    According to defendants' memorandum of law in support of their motion for summary judgment, Thomas Roos is also the owner of an entity entitled IDC, Inc. There is some confusion or lack of symmetry between and among certain statements in the record in this case, the previous opinions of this Court, and the trial justice's decision in this case with respect to the roles of Island Development Corporation, Inc. and IDC, Inc. However, that does not in any way affect the substantive outcome of this case.

In March of 1988, Globe and GISCA amended and restated the original condominium declaration (the master declaration). The master declaration reserved certain of Globe's development rights which had been provided for in the original declaration, including the right to convert the Reserved Area to a master unit and to construct improvements on it or to withdraw it completely from the GIS Condominium. The master declaration provided that those rights expired on December 31, 1994.

"After passage of the 1988 master declaration, Globe's interests were transferred to [Island Development Corporation, Inc.], and [ultimately] thereafter to [Properties], through a series of sales and assignments." *America I*, 844 A.2d at 122. During this time, Globe (or its successor declarants) was attempting to amend the master declaration to extend the deadline by which it was required to exercise its rights to develop the Reserved Area. The proposed amendments were ultimately passed by the master executive board of the GIS Condominium, and they purported to extend the development rights of Properties until December 31, 1999. Several unit owners objected to the validity of the amendments.

Despite that fact, Properties constructed an event facility on the Reserved Area, which bore the name the "Newport Regatta Club" (the Regatta Club). Clambakes was incorporated to operate the Regatta Club. From December of 1998 until April 8, 2005, Properties leased the Reserved Area, including the Regatta Club,

to Clambakes. According to defendants' memorandum of law in support of their motion for summary judgment in the instant case, IDC, Inc. was the entity with which clients wishing to host events at the Regatta Club actually contracted; IDC, Inc. would then hire Clambakes to run the events. According to Clambakes, it "worked to market the venue through advertising, attending bridal shows, and conducting individualized marketing and sales;" and, through its efforts, it had increased its profits "exponentially" from the early years of running the Regatta Club. Clambakes also contends that it spent significant amounts of money on maintenance and improvements, licenses and permits, related legal expenses, and developing and building the reputation of the Regatta Club as a "premier event venue * * *."

In 1999, a state court action was filed against IDC, Properties, and Mr. Roos by the three condominium associations that GISCA oversees—America Condominium Association, Inc., Capella South Condominium Association, Inc., and Harbor Houses Condominium Association, Inc. *America I*, 844 A.2d at 119, 125. The plaintiffs in that case alleged that the amendments to the master declaration at issue, which (among other things) purported to extend the development rights of Properties with respect to the Reserved Area until December of 1999, were in violation of the Rhode Island Condominium Act. *Id.* at 119; *see* G.L. 1956 chapter 36.1 of title 34. Clambakes was not a party to that suit. *See America I*, 844 A.2d at

- 5 -

119. It is with respect to that suit that this Court eventually opined in *America I* and *America II*.

In *America I* and *America II*, we held that the amendments to the master declaration, including the amendment extending the expiration date for Properties' development rights over the Reserved Area, were not in conformity with the requirements of the Rhode Island Condominium Act; accordingly, it was our holding that Properties' development rights to the Reserved Area had expired in December of 1994 before Properties attempted to exercise those rights by constructing the Regatta Club. *America II*, 870 A.2d at 441-42; *America I*, 844 A.2d at 130-31. We also held, in *America II*, that title to the Reserved Area was vested in the "unit owners in common ownership from the creation of the condominium," subject to the development rights of Properties. *America II*, 870 A.2d at 443. Therefore, because Properties' rights had expired in 1994, the unit owners, rather than Properties, held title to the Reserved Area. This Court additionally held, in *America I*, that Properties was not entitled to any equitable relief based on a laches defense because it had built the Regatta Club when it knew that the ownership of the Reserved Area was being contested. *America I*, 844 A.2d at 134.

Subsequent to the issuance of our opinion in *America II*, which did not depart from our holding in *America I*, GISCA sought, on behalf of the unit owners, to evict Clambakes from the Regatta Club. Clambakes then sought protection in the United

States Bankruptcy Court.[3]   It is undisputed: (1) that Clambakes ultimately turned over possession of the Reserved Area to defendants pursuant to a consent order entered into by the parties in Bankruptcy Court; and (2) that defendants thereafter rented the Regatta Club facilities to a new tenant, which continues to run events at that location.   In its Second Amended Disclosure Statement to Debtor's Second Amended Plan of Reorganization filed in the Bankruptcy Court, Clambakes stated that it would reserve all of its business assets including its "personal property, intangible and intellectual property, cash on hand, * * * and all * * * licenses pertaining to its operations * * *."   It also reserved the right to pursue any and all claims regarding the Regatta Club.   It further stated that it would be "assessing various options to enable it to resume conducting banquet functions in the future at levels similar to those conducted by [Clambakes] pre-petition."

On April 19, 2005, Clambakes filed the original complaint in the instant action against the unit owners individually; that complaint contained three counts for declaratory judgment and injunctive relief; one count for unjust enrichment; one

---

[3]     In making its argument to this Court, especially with respect to the issue of whether or not Clambakes conferred a benefit on defendants, Clambakes relies heavily on the proceedings that ensued in the United States Bankruptcy Court and subsequently on appeal to the United States District Court for the District of Rhode Island and to the United States Court of Appeals for the First Circuit.  Given our holding in this case, we need not delve into the bankruptcy proceedings in any detail. *See infra*.  We refer the interested reader to the First Circuit's opinion in *In re: IDC Clambakes, Inc.*, 852 F.3d 50 (1st Cir. 2017), for a more detailed discussion of the bankruptcy proceedings.

count sounding in quasi-contract; one count for tortious interference with prospective business relations; and one count for specific performance. On December 28, 2006, Clambakes amended its first complaint, adding counts for breach of contract, misrepresentation, and tortious interference with contract. Thereafter, on June 12, 2014, the parties stipulated to the dismissal of all counts except the counts for misrepresentation, unjust enrichment, and quasi-contract.

On February 26, 2016, the unit owners moved for summary judgment. On June 28, 2016, the justice considering that motion issued an order granting the motion with respect to the count for misrepresentation and allowing additional time for discovery and briefing on the remaining two counts. Clambakes then moved, on July 22, 2016, to amend its complaint to include GISCA as an additional defendant; that motion was granted on September 29, 2016.

On January 19, 2018, defendants filed a new motion for summary judgment on all remaining claims. The defendants contended, among other things, that summary judgment was appropriate because: (1) Clambakes was barred from pursuing its claims in view of the doctrine of *res judicata*; and (2) Clambakes could not prevail on its unjust enrichment and quasi-contract claims due to the fact that it could not demonstrate that it conferred any benefit on defendants "nor that any inequity will result if Clambakes is not compensated for leaving the Regatta Club location in November of 2005." Clambakes then filed its objection, averring that

defendants "consented to Clambakes' establishment of a landmark business at the Regatta Club, then reaped the benefits of Clambakes' investment by ousting Clambakes from the location and leasing it to Clambakes' biggest competitor." Clambakes further posited that its claims were not barred by the doctrine of *res judicata*.

A hearing on defendants' motion for summary judgment and Clambakes' objection thereto was conducted on July 2, 2018. The hearing justice proceeded to issue a written decision on September 26, 2018, granting defendants' motion for summary judgment on the remaining two counts. An order to that effect entered on October 29, 2018, and final judgment entered on the same day. Clambakes filed a notice of appeal to this Court.

## II

### Standard of Review

This Court has stated that it "will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Correia v. Bettencourt*, 162 A.3d 630, 635 (R.I. 2017) (internal quotation marks omitted). "We will affirm a [hearing justice's] decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks

omitted).  It is the nonmoving party who "bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (internal quotation marks omitted).  Additionally, we have stated that "summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *."  *Id.* (internal quotation marks omitted).

## III

## Analysis

We must begin our assessment with a discussion of this Court's jurisprudence with respect to unjust enrichment, quantum meruit, and quasi-contract.[4]

We have repeatedly stated that "claims for unjust enrichment sound in equity * * *."  *United Lending Corp. v. City of Providence*, 827 A.2d 626, 632 (R.I. 2003); *see also Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 97 (R.I. 1992) (stating that cases of quasi-contract arise from "the law of natural immutable justice

---

[4]     The counts remaining in this action at the time when the motion for summary judgment at issue was decided were for unjust enrichment and quasi-contract. However, the hearing justice noted in his decision that, in Superior Court, the parties referred to the counts as unjust enrichment and quantum meruit.  Additionally, Clambakes refers to unjust enrichment and quantum meruit in its memorandum filed before this Court in accordance with Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure.  Whether the second count was actually for quasi-contract or quantum meruit has no bearing on the outcome of this appeal.

and equity") (internal quotation marks omitted). We have explained that "[u]njust enrichment is '[t]he retention of a benefit conferred by another, who offered no compensation, in circumstances where compensation is reasonably expected.'" *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 210 (R.I. 2015) (quoting Black's Law Dictionary 1771 (10th ed. 2014)). "The fact that a recipient has obtained a benefit without paying for it does not itself establish that the recipient has been unjustly enriched." Restatement (Third) *Restitution and Unjust Enrichment* § 2(1) (2011). Rather, unjust enrichment occurs "when a benefit is conferred deliberately but without a contract[;] * * * [t]he resulting claim of unjust enrichment seeks to recover the defendant's gains." *South County Post & Beam, Inc.*, 116 A.3d at 210 (internal quotation marks omitted). In order "[t]o recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof." *Id.* at 210-11 (quoting *Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, 90 (R.I. 2014)).

In contrast, "[q]uantum meruit is a slightly different, but closely related, cause of action * * *." *Id.* at 211. It is "a Latin term for 'as much as he has deserved,'" and is defined as "[a] claim or right of action for the reasonable value of services

- 11 -

rendered." *Process Engineers & Constructors, Inc. v. DiGregorio, Inc.*, 93 A.3d 1047, 1052 (R.I. 2014) (quoting Black's Law Dictionary 1361, 1362 (9th ed. 2009)). An action for quantum meruit "permits recovery of damages in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship." *South County Post & Beam, Inc.*, 116 A.3d at 211 (internal quotation marks omitted). In order to recover under the doctrine of quantum meruit, a plaintiff would need to show that there was some benefit conferred upon the defendant from services rendered by the plaintiff and that the defendant "would be unjustly enriched without making compensation therefor." *Id.* (internal quotation marks omitted).

"While the term 'unjustly enriched' is included as a requirement for recovery under a quantum meruit theory, we have described the nuanced distinction between unjust enrichment and quantum meruit as follows: While unjust enrichment focuses on the propriety of a payee or beneficiary retaining funds or a benefit, quantum meruit's primary focus is on the value of services rendered." *Id.* (internal quotation marks omitted). Generally, quantum meruit applies "in a situation in which the plaintiff has provided services to the defendant for which the defendant has refused to pay." *Id.* (internal quotation marks omitted).

Unjust enrichment and quantum meruit are "both * * * quasi-contractual theories."[5] *Id.* (internal quotation marks omitted). "[A]ctions brought upon theories of unjust enrichment and quasi-contract are essentially the same." *Id.* (quoting *Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 418 (R.I. 2013)). Thus, despite the subtle distinction we have just discussed between unjust enrichment and quantum meruit, the three elements necessary to recover under a theory of unjust enrichment are identical to the elements required to recover under a quantum meruit theory. *See id.*

---

[5]     In discussing the doctrines of unjust enrichment, quantum meruit, and quasi-contract, we have previously noted the following:

> "[C]laims for the redress of unjust enrichment did not fit comfortably into either the category of contract or that of tort, they came to be described as claims in *quasi-contract*. Some of them were originally characterized as being in *quantum meruit* (as much as he deserved), a form of action used for claims to payment for services. This procedural term has persisted and is sometimes used inexactly as a synonym for the more general term *quasi-contract*, which refers to any money claim for the redress of unjust enrichment." *Process Engineers & Constructors, Inc. v. DiGregorio, Inc.*, 93 A.3d 1047, 1053 n.7 (R.I. 2014) (quoting Black's Law Dictionary 370 (9th ed. 2009)); *see also R & B Electric Co., Inc. v. Amco Construction Co., Inc.*, 471 A.2d 1351, 1355 (R.I. 1984) ("One of the theoretical bases underlying the doctrine of quasi-contract states, that for quasi contract neither an actual promise nor privity is necessary.") (internal quotation marks omitted).

We have stated that "[t]he third prong of the analysis is the most important"—namely, that "the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof." *Id.* at 211, 212 (quoting *Emond Plumbing & Heating, Inc.*, 105 A.3d at 90); *see also R & B Electric Co., Inc. v. Amco Construction Co., Inc.*, 471 A.2d 1351, 1356 (R.I. 1984). "[T]he court must look at the equities of each case and decide whether it would be unjust for a party to retain the benefit conferred upon it without paying the value of such benefit." *South County Post & Beam, Inc.*, 116 A.3d at 112 (quoting *R & B Electric Co., Inc.*, 471 A.2d at 1356). In determining what is, and what is not, an unjust result, the hearing justice must "examine the facts of the particular case and balance the equities." *Id.* (quoting *Emond Plumbing & Heating, Inc.*, 105 A.3d at 90).

For the purposes of this case, we will assume without deciding that the first two elements of the unjust enrichment analysis have been satisfied. We do so because, in our judgment, the third element of the unjust enrichment analysis is dispositive of the case. Thus, we will focus our analysis on a determination as to the existence *vel non* of a genuine issue of material fact with respect to whether or not it would be inequitable for defendants to retain any benefit that may have been conferred upon them by Clambakes. We will also consider whether or not

defendants are entitled to judgment as a matter of law with respect to the quasi-contractual claims at issue.

## A

## The Hearing Justice's Decision

The hearing justice held that Clambakes' quasi-contract claims "must fail" because it had been unable to point to the existence of a genuine issue of material fact as to two essential elements: (1) that a benefit was conferred on defendants; and (2) that, even if there were such a conferred benefit, it would be unjust for defendants to retain the benefit.

With respect to the issue of whether or not any alleged enrichment was unjust, the hearing justice summed up Clambakes' contention as follows: "[Clambakes] essentially claims that the Defendants were unjustly enriched because they were able to benefit by receiving a premium rental price for the Reserved Area inasmuch as [Clambakes'] reputation imparted an increased value upon the res of the Reserved Area." He stated that Clambakes ignored the fact that it lost the Reserved Area because Properties, its landlord, did not prevail in the litigation culminating in *America I* and *America II*; he added that Clambakes should not now be allowed to profit from Properties' lack of success in *America I* and *America II*. He then opined as follows:

> "How can it be unjust when any alleged benefit received
> by the Defendants was solely a result of winning the legal

- 15 -

battle concerning its ownership of the Reserved Area? How can the consequence of a final judicial determination be deemed unjust? It cannot."

The hearing justice added that, in *America I*, Properties was found not to be entitled to equitable relief because it built the Regatta Club on land the ownership of which Properties knew was still in dispute. He stated that it "ma[de] no sense that the Defendants would unjustly retain the benefit of their own property when [Clambakes] operated the Regatta Club over the years with full knowledge that the *America* litigation was ongoing which was contesting its landlord's ownership of the Reserved Area." He further stated that Clambakes was not "entitled to the application of unjust enrichment when its landlord, [Properties], was not entitled to relief based upon the application of equitable principles, especially considering that Mr. Roos is the president and sole shareholder of both corporations."[6]

---

[6] We need not recount the decision of the hearing justice as to whether or not a benefit was conferred since we are of the opinion that the third element of the applicable analysis—namely, whether it would be inequitable for defendants to retain the benefit—is dispositive. *See Grady v. Narragansett Electric Co.*, 962 A.2d 34, 42 n.4 (R.I. 2009) (referencing "our usual policy of not opining with respect to issues about which we need not opine"). We also need not delve into his discussion of the issue of whether or not the doctrine of *res judicata* acted as a bar to Clambakes' claims. *See id.*

## B

## Discussion

Clambakes contends before this Court that "[t]he Superior Court * * * committed reversible error by failing to acknowledge the federal courts' holdings in the *Bankruptcy Litigation* regarding the benefits Defendants received from Clambakes." (Emphasis in original.) It posits that defendants never objected to Clambakes' use of the Reserved Area and only revoked that consent after Clambakes had made the Regatta Club a profitable business. It adds that "Defendants appreciated a much more valuable benefit from Clambakes than Clambakes did from Defendants which necessitates, at minimum, a trial in which factual findings can be made as to the associated value." It further avers that "[w]hether it would be unjust for [defendants] to retain a substantial benefit conferred by Clambakes without compensation, and the value of that benefit were both questions of fact to be determined by a jury."

Clambakes seems to focus much of its argument before this Court on the benefit conferred—*i.e.*, goodwill, reputation, and increased rental value—rather than on whether or not it would be inequitable for defendants to retain that benefit without paying for it. We, on the other hand, focus on the latter consideration.

We begin by noting that it is clear to this Court that no genuine issue as to material fact exists in this case; indeed, the parties do not dispute the facts which

form the basis of this case. What is more, in our opinion, the weighing of the equities in this case to determine whether or not defendants' retaining of any benefit conferred would be equitable, is not, as Clambakes avers, a factual question which defeats summary judgment. *See, e.g.*, *Emond Plumbing & Heating, Inc.*, 105 A.3d at 86, 89-92 (affirming the grant of a motion for summary judgment because, under the theory of unjust enrichment, it would not have been inequitable for the moving party to retain any benefit that may have been conferred).

After our thorough review of the record in this case and the parties' arguments on appeal, we are in wholehearted agreement with the following cogent statement by the hearing justice which bears repeating:

> "How can it be unjust when any alleged benefit received by the Defendants was solely a result of winning the legal battle concerning its ownership of the Reserved Area? How can the consequence of a final judicial determination be deemed unjust? It cannot."

If a benefit were conferred by Clambakes in this case, defendants would be merely retaining a benefit which was conferred as a direct result of having another entity use defendants' property inappropriately for a little over six years; and, it is worth noting that defendants only regained title and control of their property through an extended court battle. There is certainly nothing unjust or inequitable about defendants reclaiming their property and putting it to beneficial use.

What is more, we made it clear in *America I* that IDC, Properties, and Mr. Roos could not prevail on their equitable claims because they had constructed the Regatta Club on land concerning which they knew there was a dispute with respect to title. *America I*, 844 A.2d at 134. IDC, Properties, and Mr. Roos entered the Reserved Area and built on it at considerable risk. It would be nonsensical for this Court to now permit Clambakes to pursue its equitable claims, especially given the fact that Mr. Roos is the president and sole shareholder of the two entities involved in *America I* (IDC and Properties) and is the president and sole shareholder of Clambakes. We certainly cannot now say that the wrongdoer should be permitted to benefit through a quasi-contractual theory.[7]

Accordingly, in our judgment, there is no genuine issue of material fact remaining in this case, and the defendants are entitled to judgment as a matter of law because it would not be inequitable for the defendants to retain any benefit that may have been conferred on them by Clambakes.[8] *See Correia*, 162 A.3d at 635.

---

[7]  Our conclusion is not affected by the fact that IDC, Properties, and Clambakes are separate and distinct legal entities.

[8]  Given our holding, we need not address the *res judicata* arguments raised on appeal. *See Grady*, 962 A.2d at 42 n.4.

## IV

## Conclusion

Accordingly, we affirm the judgment of the Superior Court. We remand the record to that tribunal.

Justice Flaherty participated in the decision but retired prior to its publication.

Justice Lynch Prata and Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | IDC Clambakes, Inc. v. Dennis J. Carney, in his capacity as Trustee of the Goat Island Realty Trust, et al. |
| **Case Number** | No. 2018-340-Appeal. (NC 05-177) |
| **Date Opinion Filed** | March 19, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> William P. Devereaux, Esq. <br> Matthew C. Reeber, Esq. <br> For Defendants: <br><br> Charles D. Blackman, Esq. <br> Adam Ramos, Esq. |